## COMMISSIONER OF INTERNAL REVENUE v. ELMHURST CEMETERY CO. OF JOLIET.

### No. 5617.

Circuit Court of Appeals, Seventh Circuit.
March 17, 1936.

Rehearing Denied May 17, 1936.

Frank J. Wideman, Asst. Atty. Gen., and Norman D. Keller and Howard P. Locke, Sp. Assts. to the Atty. Gen., for petitioner.

Edward J. Quinn and J. F. Riordan, both of Chicago, Ill., and Elden McFarland, of Washington, D. C., for respondent.

Before EVANS and SPARKS, Circuit Judges, and SULLIVAN, District Judge.

This appeal involves respondent's income taxes for the years 1926, 1927, and 1928. Controversy is over the value of vacant cemetery lots on March 1, 1913. The Commissioner fixed the value at 23.96 cents per square foot. The taxpayer appealed, and the Board of Tax Appeals determined the value at 76.6 cents per square foot. The Commissioner appealed.

EVANS, Circuit Judge.

Does the evidence support the finding of the Board of Tax Appeals that lots in respondent's cemetery were worth 76.6 cents per square foot on March 1, 1913? If so, we must affirm.

*The facts.* Respondent was organized in 1909. It purchased 137 acres of land near Joliet for $60,000 and improved 37 acres of

it at a cost of $35,000. From this improved acreage it sold lots as follows:

| | | | |
|---|---|---|---|
| 1909 | 7,308.55 sq. ft. at 73¢ | per sq. ft. |
| 1910 | 7,005.55 sq. ft. at 71.5¢ | per sq. ft. |
| 1911 | 7,312.20 sq. ft. at 70.2¢ | per sq. ft. |
| 1912 | 6,320.20 sq. ft. at 77.6¢ | per sq. ft. |
| 1913 | 8,506.10 sq. ft. at 79.5¢ | per sq. ft. |
| Total | 36,452.60 sq. ft. at 74.36¢ per sq. ft. | |

The superintendent of respondent was the only witness. All other facts were stipulated. The superintendent estimated that it would take seventy-five years to dispose of all of the property as and for cemetery lots. He testified the average price at which lots were sold the year immediately preceding March 1, 1913, was 76.6 cents per square foot. In the years 1926, 1927, and 1928, the footage sold and prices received were as follows:

| | | |
|---|---|---|
| 1926 | 14,939.9 sq. ft. at $1.55 |
| 1927 | 10,979 sq. ft. at 1.66 |
| 1928 | 17,077.5 sq. ft. at 1.77 |

The Board accepted the selling price of lots for the year previous to March 1, 1913, as the basis of its determination of fair value. Petitioner urges that such selling price should be discounted because of the years required to dispose of the entire tract.

█ While selling price is often a satisfactory way of determining value, it is not always so. Heiner v. Crosby, 24 F.(2d) 191 (C.C.A.3d); Chicago Ry. Equipment Co. v. Blair, 20 F.(2d) 10, 13 (C.C.A. 7th). A purchaser of an unimproved quarter section of land in Northern Wisconsin, for example, might have 200,000 evergreen trees suitable for Christmas use on his tract, and his offer to sell them to whomsoever would come and cut and carry them away for 25 cents each was accepted by one hundred persons in a single year. It would hardly be claimed that the 200,000 trees as they stood on the land were worth $50,000, especially if it be shown that the land was purchased the year before at $10 per acre.

The land here in question cost respondent $440 per acre in 1909. The Board, four years later, in 1913, fixed its value at $32,000 per acre. Differently stated, the cost price in 1909 was 1.1 cents per square foot. Its value in 1913 was fixed at 76.6 cents per square foot. The extraordinary rise must have been due solely to the change in its use for there was no evidence of rise in the value of land around Joliet from 1909 to 1913.

To emphasize the weakness of selling price in certain cases, take another illustration. Assume the change from farm acreage to cemetery lots occurred January 1, 1913, and 5,000 square feet of lots had been sold at 76 cents per square foot during the two months following organization. Assume further that the cost on January 1 was one cent per square foot. Would the lot selling price completely overcome the evidence furnished by the purchase price three months earlier?

██ We think the facts in this case necessitate the rejection of the selling price as the sole determinator of value. Far more equitable is the selling price less discount for years required to realize said selling price. We do not say that in all cases and under all circumstances such basis should be used in determining the 1913 value of cemetery lots. Various factors, such as age of cemetery, location, the existence of other cemeteries, and cemetery sites and many other matters, should be considered. An impartial view would be, we think, that the selling price of a few lots would have to give way before the more satisfactory evidence of cost price.

█ The statute provided that the cost of the property or "the fair market value of such property as of March 1, 1913, whichever is greater" shall be used in determining income. The Commissioner did not limit the taxpayer to cost price but fixed a market value well in excess of that figure. The burden was upon respondent to show this valuation was not only incorrect, but to present some evidence to support the higher figure. This burden has not been overcome in the case before us.

█ Our conclusion is that the Commissioner was liberal with the taxpayer. It should be noted that fair market value is the alternative to cost price. If the circumstances make evidence of fair market value impossible or not obtainable or so uncertain and unsatisfactory as to render any finding thereon purely speculative, then the cost price must be used. Obviously, the respondent cannot complain when the Commissioner, under such circumstances, fixes a valuation which is much higher than cost price.

The order of the Board of Tax Appeals is reversed with directions to affirm the determination of the Commissioner.