ELMHURST CEMETERY COMPANY OF JOLIET *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 255.   Argued January 5, 6, 1937.—Decided February 1, 1937.

*Mr. Elden McFarland,* with whom *Mr. Edward J. Quinn* was on the brief, for petitioner.

*Mr. Thurman Arnold,* with whom *Solicitor General Reed, Assistant Attorney General Jackson,* and *Messrs.*

*Sewall Key* and *J. Louis Monarch* were on the brief, for respondent.

Mr. Justice McReynolds delivered the opinion of the Court.

Petitioner, in 1909, purchased one hundred and thirty-seven acres of land near Joliet, Illinois, for $60,000.00. Thirty-seven acres were divided into plots and developed for cemetery purposes by grading, constructing drives, planting shrubbery, etc., at a cost of $35,000.00. Grave plots, varying in area from 150 to 1,500 square feet, were sold from time to time under contracts for perpetual care.

Some 36,000 square feet were disposed of during the years 1909 to 1913 at prices ranging from 70.2 cents to 79.5 cents. The average between March 1, 1912, and March 1, 1913, was 76.6 cents. In the three years 1926, 1927, and 1928, 42,000 square feet were sold for $1.55 to $1.77. To determine the taxable gains realized from the latter sales it became necessary to ascertain the value of the lots as of March 1, 1913. The petitioner's return estimated this at 76.6 cents. The Commissioner adopted 23.96 cents and assessed deficiencies accordingly.

Upon petition for redetermination the Board of Tax Appeals, after considering the evidence, approved the 76.6 cent valuation and found no deficiencies. The evidence consisted of a stipulation by counsel concerning sales in 1909 to 1913 as detailed above, and the testimony of the Cemetery Superintendent.

He stated the original cost of the one hundred and thirty-seven acres, expense of development, area sold in 1926, 1927, 1928, and prices obtained. He affirmed familiarity with the property on March 1, 1913, prices then prevailing, and stated that the sales of 1912 and 1913 were in normal course without extra effort. Also that "the purchase price was established by my visiting

a good many cemeteries that I figured were practically of the same class as that cemetery and situated near cities of about the same population, and I established a price from the price they were selling at." Further that "every grave and lot in the cemetery sold since its organization is under perpetual care, and when perpetual care is provided, it means keeping the roads and drives in proper repair, keeping the drainage system in proper repair, keeping the fences in repair, cutting the grass, pruning the trees, shrubs, and keeping it in good condition." "We hope for a gradual increase in sales every year because, as a general rule, for every head of a family that is buried you secure four new families. That is the rule cemetery companies have adopted." He thought it might take seventy-five years to dispose of all lots.

The Board declared "the parties are now concerned only with the value as of March 1, 1913, of that thirty-seven acres of petitioner's lands which have been improved and from which sales have been made." "Beyond statements of counsel to the effect that respondent [Commissioner] has attempted by formula to reduce the value of the improved land as of March 1, 1913, to present value, we are uninformed as to the method by which he chose the figures at which he fixes the basis for determining gain. Petitioner, however, has chosen as the footage valuation as of March 1, 1913, the selling price of its grave lots during the year just preceding that date—76.6 cents—which is less than the average sales price during the month of March, 1913. We are of opinion that the valuation for which petitioner contends is reasonable and should be allowed. It is based upon actual sales, and consequently comes as closely as may be to that fair market value, so often judicially defined as the price which property will bring when offered by a willing seller to a willing buyer, neither being obligated to buy or sell."

Lots disposed of in 1912 and 1913 went with agreements for perpetual care; so did those sold in 1926, 1927, and 1928; prices obtained in the latter years may be compared with those received in the earlier ones—they were for like things.

The Commissioner asked review by the Circuit Court of Appeals. He there urged that March 1, 1913, values should be ascertained by discounting sale prices during the preceding twelve months because of the time which would be required in order to dispose of the whole. The Court said: "The facts in this case necessitate the rejection of the selling price as the sole determinator of value. Far more equitable is the selling price less discount for years required to realize said selling price." "The Commissioner was liberal with the taxpayer." Accordingly it reversed the Board and directed affirmance of the Commissioner's assessment.

This action, we think, amounted to an unwarranted substitution of the Court's judgment concerning facts for that of the Board. There was substantial evidence, as appears above, to support the latter's conclusion, and in such circumstances this must be accepted. It is the function of the Board to weigh the evidence and declare the result. We undertook to state the applicable rule in *Helvering* v. *Rankin,* 295 U. S. 123, 131, and *General Utilities & Operating Co.* v. *Helvering,* 296 U. S. 200, 206.

The judgment here complained of must be reversed. The action of the Board of Tax Appeals is affirmed.

*Reversed.*