## HOAG v. COMMISSIONER OF INTERNAL REVENUE.

### No. 1723.

Circuit Court of Appeals, Tenth Circuit.

Dec. 19, 1938.

Donald C. McCreery, of Denver, Colo. (Lee, Shaw & McCreery, and Wm. A. Bryans, III, all of Denver, Colo., on the brief), for petitioner.

Frederic G. Rita, of Washington, D. C. (James W. Morris, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to

the Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

This petition for review involves a determination by the Board of Tax Appeals as to deficiencies of $1,170.73 and $2,511.19 for the years 1931 and 1932, respectively, in income tax against Frank S. Hoag.

The Star-Journal Publishing Company of Pueblo, a Colorado corporation, declared and paid dividends of $15,000 in 1931 and $13,000 in 1932, respectively. Petitioner's wife Louise M. Hoag, reported these dividends in her income tax returns for such years. The Commissioner concluded that these dividends belonged to petitioner, and not to her, notifying him under date of June 4, 1934, in a deficiency letter, that such dividends were being added to his reported income for such years, and additional taxes covering payment were to be assessed against him.

A petition was filed with the Board of Tax Appeals, the contention being made that petitioner had, prior to 1931, made a gift of the stock in said publishing company on which such dividends, were declared to his wife, and that during 1931 and 1932 the stock and the dividends therefrom belonged to her.

This appeal is from an adverse finding and ruling by the Board.

■ This court may not make an independent determination of the facts as to matters which were in issue below. Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154; Colorado National Bank et al. v. Com'r, Helvering, 59 S.Ct. 48, 83 L.Ed. ——. The Board's function is to weigh the evidence, draw all reasonable inferences and declare the result, this court being limited in its review to ascertain whether there was substantial evidence to support its findings and decision and whether the correct rule of law was applied. Helvering v. Nat. Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; Hulburd v. Commissioner, 296 U.S. 300, 306, 56 S.Ct. 197, 80 L.Ed. 242; Helvering v. Rankin, supra; General Utilities Co. v. Helvering, supra; Colorado National Bank et al. v. Helvering, supra. Such findings must be taken as established if they are supported by substantial evidence. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 490, 57 S.Ct. 569, 81 L.Ed. 755; Helvering v. Rankin, supra.

■ A finding which is only a conclusion of law or a determination of a mixed question of law is subject to review. Bogardus v. Commissioner, 302 U.S. 34, 39, 58 S.Ct. 61, 82 L.Ed. 32; Helvering v. Tex-Penn Oil Co., supra; Helvering v. Rankin, supra.

Under the record, the function of this court is limited to review of the evidence to determine whether the Board of Tax Appeals' findings are supported by substantial evidence, and if they are, then as to the conclusion thereon, to determine whether it is in accordance with the law.

■ The material evidence as testified to is substantially as follows:

By Frank S. Hoag, petitioner, that he purchased the Star-Journal Publishing Company in 1918 from John F. Vail, paying for same in part with cash and balance in bonds, the bonds being paid off in 1922; that at that time he talked to his wife about a gift of the publishing company stock; he told her that he intended for her to have everything except the qualifying shares as he didn't want his estate to be involved in any court proceedings if he died before she did; that a certificate for 997 shares in his name was cancelled, a new certificate in like amount being issued to her; that about the same time the certificate was endorsed in blank by his wife and at her request placed by him in his safety deposit box; that she did not have access to the box with a key until 1925 at which time he procured duplicate keys, notifying the bank that both should have access to the box; that the 997 shares of stock stood on the publishing company's books in her name from 1922 up to and including the taxable years in question, and that the dividends for 1931 and 1932 were first credited to her account and then transferred to his account, being paid to him and by him deposited in the bank to credit of his account; that he had authority from his wife to deposit the money in his account and invest and spend it as he saw fit; that his wife had authority to draw on his account, with no limitation as to the amount.

Prior to 1930, certificate of ownership required by the postal laws showed the owner of the Star-Journal to be Star-Journal Publishing Company and Frank S. Hoag. On advice of counsel, the certificate was changed in 1930 and thereafter showed the owners to be Star-Journal Publishing Company and Louise M. Hoag. She first became a director in 1927.

On cross-examination, petitioner stated that he desired his wife to have the stock certificate in her name, with her blank endorsement, and be held in his box so that the publishing company would not be involved in court action in the management of her estate in the event of his death. He admitted making an affidavit containing the following:

"That this affiant desired this stock to be the property of his wife for her greater protection, and to avoid administration of his estate, payments of inheritance tax and confusion in the management of the Star-Journal in the event that the affiant died prior to his wife's decease * * *; that said certificate was subsequent to its delivery to Mrs. Hoag, endorsed by her in blank to facilitate the transfer thereof to this affiant in the event of the death of Mrs. Hoag prior to the death of this affiant."

He also admitted that over $100,000 was paid in dividends from 1922 to 1932, the checks covering same being made payable to petitioner, and with his wife's consent deposited to the credit of his account, and that during such time she reported no other income and had no securities; that he purchased a summer home for her which cost $8,500, improving same at a cost of $3,500, such sums being paid out of his bank account; that in 1932 he drew $30,000 out of such account for investment in common and preferred stock of Utah Rock Asphalt Company, placing the preferred stock in his wife's name; that in 1933 all such stock having become worthless, he claimed the entire loss in his 1933 income tax return on the ground that it was his money which was thus invested. He also admitted he had pleaded guilty to a charge of evading income taxes for 1922 to 1928, and that he served a sentence therefor.

Louise M. Hoag, wife of petitioner, testified that in 1922 she and her husband had a conversation relative to a gift of the stock; that he wanted her to own the newspaper so in case of his death there would be no court proceedings, and that the 997 shares of stock were thereupon transferred to her; that she endorsed the certificate and it was placed in her husband's safe deposit box to which she did not have access until 1925; that she considers she has owned the paper since 1922, her husband consulting with her in its management and relative to any major changes; that dividends from the stock were hers and were deposited in her husband's bank account; and that she checked on same for family purposes.

On cross-examination, she admitted she knew very little about the business of the publishing company, neither knowing the amounts of dividends paid each year nor when she became a director; that she had no recollection of reporting or paying an income tax on any income other than on the dividends for 1931 and 1932.

The Board's findings are substantially a restatement of the evidence. Specifically, it found that:

"Petitioner had the certificate of stock issued to his wife and had her sign her name to the assignment thereof in blank in order that, upon the death of either of them, the survivor might establish ownership of the stock and thus prevent its inclusion in the estate of the deceased spouse for administration by the court and for estate or inheritance tax purposes. Petitioner did not intend to divest himself of title to, or dominion and control of, the stock in praesenti or during his lifetime, and did not at any time divest himself of dominion and control thereof."

Although the petitioner and his wife both testified that a gift was made, the circumstances under which the transfer took place, the endorsement in blank and redelivery to petitioner, the method of payment of dividends and deposit of such dividends in his personal account, and the use of the monies therefrom for investments and other purposes, the manipulation of the $30,000 Utah Rock and Asphalt Company investment loss in 1933, his admitted previous conviction for income tax evasion during years 1922–1932, and after such conviction and sentence, under advice causing the changing of the name as to the ownership of the stock from that of himself to that of his wife for report to the postal authorities, and all matters under the record being considered, there was substantial evidence to justify the finding by the Board.

The mixed question of law and fact as found by the Board that no gift, in fact, was made and that the dividends were income to petitioner in 1931 and 1932, is sustained by substantial evidence.

The judgment of the Board of Tax Appeals should be, and is, affirmed.