## 94

PERSON CONST. CO. v. COMMISSIONER
OF INTERNAL REVENUE.

No. 7354.

Circuit Court of Appeals, Seventh Circuit.
Dec. 6, 1940.

John J. Ames, of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., for respondent.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Is there substantial evidence to support the Board's finding that the bad debt for which the petitioner seeks a deduction was ascertained to be worthless before the taxable year 1933? This is our question.

Most of the facts are free from doubt or dispute.

Petitioner was a contractor who constructed, pursuant to a contract entered into in 1926, a four-story building containing two lodge halls, a small hall, and two stores, for the Ring Lodge No. 8, Independent Order of Svithiod, for the agreed price of $134,969.

The building was completed in 1927 and $106,970 was paid that year by the Ring Lodge. Petitioner included the full contract price of $134,969 in its income tax return for the year 1927. The balance due petitioner, to-wit, $27,999, was never paid.

Petitioner claims that the debt became worthless in 1933. The Board found that the debt should have been charged off in 1931 or 1932.

The Facts. To finance the building, Ring Lodge in 1927 borrowed $200,000 from the Grand Lodge, giving a first mortgage on the building and premises as security for its loan. The Grand Lodge began foreclosure proceedings in 1929. Taxpayer intervened, asserting a mechanic's lien, but in October, 1931, the rights of the Grand Lodge were adjudged paramount to the mechanics' liens by the Illinois Appellate Court, and the property was sold in July, 1931, at foreclosure, the Grand Lodge bidding it in for $218,000. The period of redemption ended in July, 1932, without the property's being redeemed.

In 1930, taxpayer represented by an attorney, began an action against Ring Lodge in the Municipal Court of Chicago, to collect the balance due it. Following the adverse outcome of the foreclosure proceedings, taxpayer, in 1931, discussed with its counsel the question of the debt owing from Ring Lodge. Counsel advised taxpayer that he was trying to get a judgment against Ring Lodge and, if successful, would levy on its assets and bring a creditor's bill against Ring Lodge and Grand Lodge alleging collusion. In 1931 or 1932, the same counsel also told taxpayer that an attempt was being made to arrange for a payment of the debt by an assessment of the members of Ring Lodge, so a stenographer testified. When making its income tax returns in 1931 and 1932, taxpayer took up the matter of the collection of this debt with its counsel and was advised that efforts were still being made to collect it.

The returns of the taxpayer for each of the years 1931 and 1932 showed net losses. In these same years the taxpayer was advised by an accountant not to charge off the debt as worthless because the suit for its collection was pending.

Ring Lodge, with the consent of the Grand Lodge, continued using the mortgaged premises subsequent to the foreclosure of the mortgage and the expiration of the redemption period. In 1933, the Ring Lodge was disbanded and in that year counsel advised taxpayer of its dissolution and that it had no assets and that collection was

hopeless. The action at law was never pressed to judgment and was dismissed in 1934.

If this were a trial de novo and we were to make findings upon the impressions which the facts make upon us, a conclusion different from that found by the Board might well be recorded. But to say there is no evidence to sustain the finding of the Board—obviously that is a vastly different question.

As in many analogous situations where the test to be applied is somewhat relative in character, we may find enlightenment in a study of extreme cases over which there are few or no differences of opinion.

To illustrate: Where a claim, which it is asserted in good faith, has the protection of adequate security and the validity of the claim of security is denied and is being tested in the courts, no one may legitimately declare it to be worthless. Validity and value may well come to such a claim through a successful ending of the litigation.

On the other hand, assume we are dealing with a debt, a just one and one which would ordinarily carry a strong appeal as a moral obligation. It is wiped out by a final distribution and discharge of the debtor in bankruptcy. After the final dividend distribution and the discharge, it is tolerably safe to say the debt is worthless. In such a case a creditor may not and should not and ordinarily does not close his eyes to the obvious. In such a case his claim is lost. It has become worthless.

■ Between the two extremes there lies a twilight zone. The ascertainment of the date when a debt, which falls within this zone, becomes worthless, is not always easily determined. Fairness in such a situation necessitates an allowance for a latitude of judgment on the part of the taxpayer. And the latitude should be allowed the taxpayer, not the Government. It is his judgment that should count, provided always there is good faith, and common sense back of his judgment.

What is upsetting to the application of this or any rule is that well nigh always the exercise of the taxpayer's judgment results in the loss falling in the year of his largest income—seldom if ever in the year when the operation of his business resulted in a loss.

■ Supporting the Board's judgment are these facts:

A fraternal lodge became involved financially. It unhappily entered upon its pretentious building program shortly before the 1929 crash. Its financing was never sound. It borrowed from the parent lodge a large sum of money with which to build a club house. When the building was completed it had exhausted its funds and still was in debt to the contractors for labor and material. It had failed to raise enough money to meet its unexpectedly high building costs. It lost the confidence of the parent lodge, its largest creditor. Foreclosure proceedings were instituted and the mortgage security was challenged by the labor and mechanic lien claimants. Doubtless mistrust deepened as the litigation progressed. Promptly on winning its legal battle, the parent lodge sold the property on foreclosure sale and the debtor was shorn of all its assets (except furniture). The taxpayer then had nothing from which to collect its large claim save the moral obligation which the members of the local fraternal lodge might feel. This turned out to be nil. If there existed any basis for the hope of realization on such moral obligations in 1928, it had disappeared before 1933. We are unable to say there was no evidence to support the Board's finding.

Then, too, there was the burden of proof. Taxpayer failed to show what amount of debts the local lodge had, other than its debt and the mortgage. It does appear there were other mechanic lien claims which, it is fair to assume, were never paid. How many? What were their amounts? What was the Lodge's membership during these years? Was it functioning actively in 1930, 1931, and 1932? Was its business conducted successfully or at a loss after the foreclosure of the mortgage? Did it owe the parent lodge? From the absence of proof of these facts, the Board could indulge in no presumption in favor of the party carrying the burden of proof.

In the face of the holding of the court in Commissioner v. Elmhurst Cemetery Co., 7 Cir., 83 F.2d 4, reversed by the Supreme Court 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491, we are unable to say there was no evidence to support the Board's finding.

The order of the Board of Tax Appeals is affirmed.