## THEATRE INV. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9586.

Circuit Court of Appeals, Ninth Circuit.

May 2, 1941.

A. G. Elder and Cyril D. Hill, both of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Joseph M. Jones, and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Petitioner, Theatre Investment Company, a Washington corporation, seeks reversal

of a decision of the Board of Tax Appeals redetermining claimed deficiencies in respect of petitioner's income and excess profits taxes for the fiscal year ended June 30, 1936.

On and prior to December 5, 1935, petitioner owned all the stock of North Fourth Development Company, a Washington corporation (hereafter called North Fourth), and all the stock of General Amusement. Company, a Washington corporation (hereafter called General). The cost of the North Fourth stock to petitioner was $10,-672.53. Prior to December 5, 1935, petitioner made loans aggregating $36,272.41, of which $7,981.60 was loaned to North Fourth and $28,290.81 was loaned to North Fourth or to General. No part of either loan was ever repaid. On December 5, 1935, petitioner, for a consideration of $62,-871.22, sold the North Fourth stock to Dave Miller and released North Fourth from all indebtedness then due or owing by it to petitioner. Of the $62,871.22 received from Miller, petitioner paid Joseph J. Gottstein $4,733.42 and retained the balance.

For the purpose of determining petitioner's net gain from the sale of the North Fourth stock, the Board used as a basis [1] the cost of the stock ($10,672.53), plus the loan of $7,981.60—a total of $18,654.13. Petitioner contends that the proper basis was the sum last mentioned, plus the loan of $28,290.81, plus the $4,733.42 paid to Gottstein—a total of $51,678.36. The contention is based on two asserted facts: (1) That the loan of $28,290.81 was made to North Fourth and was due and owing by North Fourth to petitioner on December 5, 1935; and (2) that Gottstein had an interest in the stock which entitled him to the $4,733.42.

The Board did not find that the loan of $28,290.81 was made to North Fourth. Instead the Board found it was made to General. The findings [2] state: "General * * * was incorporated March 1, 1933. * * * It operated the Roxy Theatre in Seattle, Washington. This theatre operated at a loss from the beginning. * * * North Fourth was not earning sufficient profits to finance General, and it became necessary to finance it from some other source. This was done largely from loans or advances made by petitioner, some of which were paid directly to General and some paid to petitioner's subsidiary, North Fourth, and passed on by North Fourth to General [3]. * * * It is obvious from the evidence that all the loans or advancements here in question were made by petitioner either directly to General or indirectly to North Fourth to be passed on to General. * * * Obviously the book records of petitioner do not evidence the real facts. * * * The record does not disclose why petitioner caused its advances to General to appear as loans from North Fourth to General, but the record is clear that petitioner intended to advance the money to General and in fact did just that thing."

Nor did the Board find that North Fourth ever obligated itself, or ever became obligated, to pay the loan of $28,290.81. The Board found that North Fourth's trustees (directors) passed a resolution admitting that North Fourth was so obligated, but the Board also found: "Petitioner owned all the stock of [North Fourth and General] and absolutely controlled them. * * * North Fourth had no interest in General and derived no benefit from the loans. All its acts in the matter [4] were directed and controlled by petitioner." Thus, in effect, the Board found that the admission contained in the resolution was untrue.

The Board did not find that Gottstein had any interest in the North Fourth stock. The Board found that on March 18, 1933, J. von Herberg wrote Gottstein a letter stating that "It is understood that I, the

---

[1] Revenue Act of 1934, § 113, 26 U.S. C.A.Int.Rev.Code, § 113.

[2] Some of the Board's findings are stated in its "opinion."

[3] Of the $28,290.81 found to have been loaned by petitioner to General, $19,-921.74 was found to have been loaned directly to General, and $8,369.07 was found to have been "advanced" to North Fourth and by it "passed on" to General. Originally, the $19,921.74 appeared on petitioner's and General's books as a loan by petitioner to General, and did not appear on North Fourth's books at all.

Subsequently, however, all the books—petitioner's, North Fourth's and General's —were "corrected" to show it as a loan by petitioner to North Fourth and as a loan by North Fourth to General. Originally and always, the $8,369.07 appeared on petitioner's and North Fourth's books as a loan by petitioner to North Fourth, and on North Fourth's and General's books as a loan by North Fourth to General.

[4] Including, of course, the resolution mentioned.

undersigned J. von Herberg, hold in trust for you [Gottstein] a 20% interest in [North Fourth]," but the Board also found: "There is no evidence in the record of any corporate authorization of this trusteeship, and no corporate records to indicate that petitioner was engaged in a joint adventure with Gottstein or had transferred to von Herberg a 20 per cent interest in North Fourth for the benefit of Gottstein. * * * As owner of all the stock of North Fourth, petitioner received the consideration therefor, presumably in its own right, and the respondent [the Commissioner of Internal Revenue] has so determined. The burden is on petitioner to show that the respondent erred. * * * This burden it has failed to meet and the action of the respondent is sustained as to this issue." Thus, in effect, the Board found that Gottstein had no interest in the stock.

All findings hereinabove referred to are supported by substantial evidence and hence are conclusive. Phillips v. Commissioner, 283 U.S. 589, 599, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Burnet v. Leininger, 285 U.S. 136, 138, 52 S.Ct. 345, 76 L.Ed. 665; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154; Hulburd v. Commissioner, 296 U.S. 300, 306, 56 S.Ct. 197, 80 L.Ed. 242; Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346; Colorado National Bank v. Commissioner, 305 U.S. 23, 26, 59 S.Ct. 48, 83 L.Ed. 20; Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226.

Upon the facts as found, the Board properly concluded that the basis for determining petitioner's net gain from the sale of its North Fourth stock should not include the loan of $28,290.81 or the $4,733.42 paid to Gottstein.

In 1926 petitioner purchased for $20,200 bonds of Ballard Aerie No. 172, Fraternal Order of Eagles, of the face value of $20,200—part of a total issue of $150,000—secured by a second mortgage on real property in Seattle, Washington. Ballard Aerie having defaulted in the payment of interest, the bondholders brought an action [5] in a State court of Washington and, on December 29, 1932, obtained a judgment against Ballard Aerie for the principal amount of the bonds ($150,000), plus accrued interest ($59,400), a total of $209,400, with 6% interest on that total from November 1, 1932, an attorney's fee of $10,000, a trustee's fee of $3,500 and other costs. The judgment also foreclosed the second mortgage. Accordingly, on February 18, 1933, the mortgaged property was sold—subject to a first mortgage of $230,000—and was bid in by the judgment creditors (including petitioner) [6] for $13,641.11, which sufficed merely to pay the costs and a small part ($110.36) of the interest due on the judgment. Whether the principal amount of the judgment ($209,400) or the balance of the interest thereon was ever paid the record does not show.

In computing its net income for the taxable year—the fiscal year ended June 30, 1936—petitioner deducted as a bad debt [7] the $20,200 invested by it in Ballard Aerie bonds. The deduction was disallowed by respondent, the Commissioner of Internal Revenue, and by the Board, on the ground that the debt evidenced by the bonds and, later, by the judgment was not ascertained to be worthless within the taxable year. This ruling is specified as error.

Respondent's determination that the debt was not ascertained to be worthless within the taxable year was presumptively correct. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367. The burden of proving it incorrect rested on petitioner. Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 74 L.Ed. 848; Welch v. Helvering, supra; Helvering v. Taylor, 293 U.S. 507, 512-516, 55 S.Ct. 287, 79 L.Ed. 623.

The burden was not sustained. There was no proof that the judgment was ascertained to be worthless in the taxable year, or that it was in fact worthless. There was some attempt to show that the judgment creditors' equity in the property

---

[5] The action was brought in the name of T. J. Heltsley, trustee, but the bondholders were the real parties plaintiff.

[6] Acting by and through their agent, A. W. Quist.

[7] Revenue Act of 1934, § 23(k), 26 U.S.C.A.Int.Rev.Code, § 23(k).

purchased at the foreclosure sale was ascertained to be worthless in the taxable year, but the Board found otherwise, and its finding is supported by substantial evidence.

Decision affirmed.