## UNITED STATES v. STATE STREET TRUST CO.

### No. 3710.

Circuit Court of Appeals, First Circuit.

Jan. 14, 1942.

Bernard Chertcoff, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty.

Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., Edmund J. Brandon and George F. Garrity, both of Boston, Mass., on the brief), for appellant.

F. H. Nash, of Boston, Mass. (John L. Hall and Maxwell E. Foster, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The original plaintiff, hereinafter called the taxpayer, brought this action to recover income taxes for the year 1930, alleging that the taxes had been assessed and collected illegally on the ground that the Commissioner improperly determined that a certain exchange of stock had resulted in the realization of a capital gain under Section 111(a) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Code, § 111(a).[1] The present plaintiff is the taxpayer's executor. The district court held that no gain had been realized on the transaction since the stock received by the taxpayer had no "fair market value" within the meaning of Section 111(c)[2] of the Revenue Act of 1928, and gave judgment for the plaintiff. The defendant has appealed.

The pertinent facts follow: The taxpayer had acquired 36 shares of the common stock and 2,500 shares of the preferred stock of the Massachusetts Utilities Associates at a cost of $77,024.22. About March 5, 1930, she exchanged this stock for 3768 shares of the Class A stock of International Hydro-Electric System under agreements between New England Power Securities Company and a group of shareholders of the Massachusetts Utilities Associates. These recipients of the Class A Hydro-Electric stock agreed with New England Power Securities Company that: "None of the Class A stock so acquired by us shall be disposed of without your consent for a period of twelve months from the date hereof." The taxpayer did not dispose of her Class A stock during this period nor did she request the per-

mission of the New England Power Securities Company so to do. While the restriction on sale had been removed in two cases, the district judge found that "there were special considerations which led to a waiver of the restriction in two instances * * * no general waiver of the restrictions was obtainable, and * * * in all probability no additional waivers would have been granted." No reference to the restrictive agreement was made on the share certificates.

The parties stipulated that: "Shares of International Hydro-Electric System Class A stock not involved under the said agreements dated March 4 or March 5, 1930, were sold on the New York Stock Exchange on March 5, 1930, at $44 a share and said price was the fair market value of such shares so sold." The district judge found: "The International Hydro-Electric System had been organized no earlier than March 25, 1929, and was a comparatively new enterprise. Some time during the year 1929 the Class A shares of International Hydro-Electric System were listed on the New York Stock Exchange, and both before and after March 5, 1930, its unrestricted shares were subject to violent fluctuation. For the year 1930, the high price was $54 and the low $18⅛; in the first half of 1931 the range was from $31 a share to $16¾ a share." It was also found that International Hydro-Electric System was one of the top entities in a highly pyramided public utility holding company system; that in December, 1929, 83.3 per cent of the capital structure of the entire system was prior to the Class A stock of International Hydro-Electric System, and that in the year 1930, 84.1 per cent of the capital structure of the entire system was prior to the Class A stock.

The following testimony was found to be true by the District Judge: "First, I think that the company was a new venture. It had been in existence only approximately nine months, approximately a year at the time this transaction took place. Secondly, the company was a highly pyramid-

---

[1] "§ 111. *Determination of Amount of Gain or Loss.*

(a) Computation of Gain or Loss. Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized. 26 U.S.C.A. Int. Rev.Acts, page 376.

[2] "(c) Amount Realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

ed holding company. Third, the stock of the company was being continually issued * * * after the payment of Class A dividends for the nine months ended December 31, 1929, there was only 2.9 per cent gross left over; for the year 1930, only 3.9; and for the year 1931 only 1.9 per cent. * * * Needless to say, that is a very slim equity of earnings being brought down for the payment of a stock." He held that no capital gain was realized because the restricted Class A shares of International Hydro-Electric System which the taxpayer received in exchange for her Massachusetts Utilities Associates stock had no fair market value within the meaning of Section 111(c). The government did not urge in its brief or in the oral argument before us that there was error in admitting evidence of the speculative nature of the Class A stock on the ground that such evidence was inconsistent with the stipulation that the selling price of $44 a share on the New York Stock Exchange on March 5, 1930, represented the fair market value of the stock. It did not press any other objections with respect to the admissibility of evidence nor did it challenge any of the findings of the district judge other than his finding that the restricted Class A stock had no fair market value.

The only issue before us is whether the lower court's finding that the restricted Class A stock had no fair market value should be set aside.

■■ A finding cannot be set aside unless it is clearly erroneous, that is, against the clear weight of the evidence. Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A. following section 723c; Fleming v. Palmer, 1 Cir., 1941, 123 F.2d 749. Perhaps it would be easier to upset the finding in this case than in the ordinary case because here the Commissioner's determination is presumptively correct, Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, and the Regulations provide that "only in rare and extraordinary cases does property have no fair market value". Regulations 74, Article 561. But there are limits to the presumptive correctness of the Commissioner's determination, Mount v. Commissioner, 2 Cir., 48 F.2d 550, and the force of the Regulations is weakened by Judge Learned Hand's statement: " * * * 'fair market value' is not nearly so universal a phenomenon as

to justify such a comment, and the implication is misleading." Helvering v. Walbridge, 2 Cir., 1934, 70 F.2d 683, 684.

■■ It may be argued that Rule 52(a) is not applicable here because the existence of a fair market value within the meaning of the statute is a question of ultimate and not primary fact. Consequently, it could be urged upon us that we should substitute our own judgment for that of the district court by analogy to the rule laid down with respect to findings of fact by the Board of Tax Appeals in Bogardus v. Commissioner, 1937, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32; Helvering v. Tex-Penn Oil Co., 1937, 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755; Helvering v. Rankin, 1935, 294 U.S. 700, 55 S.Ct. 506, 79 L.Ed. 1236. The rule is that on ultimate findings "the court may substitute its judgment for that of the Board". Helvering v. Tex-Penn Co., supra, 300 U.S. at page 491, 57 S.Ct. at page 574, 81 L.Ed. 755. We do not intend to go into the "baffling problem" [3] of ultimate and primary facts nor shall we attempt to reconcile the cases on this point. It is sufficient to say that we are bound by Elmhurst Cemetery Co. v. Commissioner, 1937, 300 U.S. 37, 57 S.Ct. 324, 325, 81 L.Ed. 491. That case seems to us to hold clearly that the existence of a fair market value is the kind of question on which the judgment of the reviewing court should not be substituted for that of the fact-finding tribunal. Indeed, it goes far beyond that. There the Supreme Court held that the question whether the "values [of real property] should be ascertained by discounting sale prices * * * because of the time which would be required * * * to dispose of the whole" was a question for the Board of Tax Appeals to settle and not the court. The Board of Tax Appeals had found that the real property had a certain value but the Circuit Court of Appeals reversed the Board, adopting a different rule of valuation, namely, that a discount should also be made because of the time which would be required to dispose of the property. The Supreme Court reversed the Circuit Court of Appeals and affirmed the Board, saying, 300 U.S. at page 40, 57 S.Ct. at page 325, 81 L.Ed. 491:

"This action, we think, amounted to an unwarranted substitution of the Court's

---

3 Paul & Merten's, The Law of Federal Income Taxation Vol. 5, p. 246.

judgment concerning facts for that of the Board. There was substantial evidence, as appears above, to support the latter's conclusion, and in such circumstances this must be accepted. It is the function of the Board to weigh the evidence and declare the result. We undertook to state the applicable rule in Helvering v. Rankin. * * *"

■ It is clear that the issue here, not involving a formulation of a standard of valuation which seems to us to be a question of law, is much more a question of fact than the one which was involved in the Elmhurst case. Of course, here we are dealing with the finding of a district court and Rule 52(a) and not with a finding of the Board of Tax Appeals and the fact-finding rule there applicable. Yet the questions are closely related because the problem here is to determine whether the fact-finding rule with respect to district courts is to be applied and the problem before the Supreme Court in the Elmhurst case was to determine whether the fact-finding rule with respect to the Board of Tax Appeals was to be held applicable.

■ The existence of a fair market value was held to be a question of fact in Mistrot v. Commissioner, 5 Cir., 84 F. 2d 545. See Regulations 74, Article 561, and Paul & Merten's, The Law of Federal Income Taxation, Vol. 5, p. 701. We hold that Rule 52(a) is applicable here.

■ The government does not challenge the findings that International Hydro-Electric System was a comparatively new enterprise; that it was one of the top entities in a highly pyramided public utility holding company system; that its Class A stock was subject to violent fluctuations; that this stock was junior to 83 or 84 per cent of the stock of the entire holding company system; that the margin of earnings covering this Class A stock was very thin, and that the Class A stock here involved could not be sold for a year. Under these circumstances, we cannot say

that the district judge's finding that the stock had no fair market value was clearly erroneous. Nor can we say that he erred in holding that the taxpayer had sustained the burden of discrediting the Commissioner's determination that the restricted Class A stock had a fair market value.

This case falls within the principle [4] of Helvering v. Tex-Penn Oil Co., supra. There the Supreme Court said:

"The court is also of opinion that the judgments must be affirmed upon the ground that in the peculiar circumstances of this case, the shares of Transcontinental stock, regard being had to their highly speculative quality and to the terms of a restrictive agreement making a sale thereof impossible, did not have a fair market value, capable of being ascertained with reasonable certainty, when they were acquired by the taxpayers."

■ The government argues that the stock here involved is not speculative within the meaning of the Tex-Penn case and that, with the speculative element thus out of the case, we are bound by the cases which hold that a restrictive agreement does not deprive stock of a fair market value. While the stock in the Tex-Penn case may have been more speculative than the stock in this case, it does not follow that the district judge committed error in holding that the Class A stock of the Hydro-Electric System was so speculative that, coupled with the restrictive agreement, it had no fair market value. That case also necessarily holds that a district judge would not be in error in considering the effect which a restrictive agreement would have on the existence of the fair market value of a stock.

We hold that the District Judge's findings cannot be set aside. Therefore, there is no need for us to consider the constitutional point raised by the plaintiff.

The judgment of the District Court is affirmed.

[4] It should be noted that the principle of the Tex-Penn case which we are now discussing is different from the other principle laid down in that case on ultimate and primary facts which was mentioned earlier in this opinion.