**MAXFIELD et al. v. UNITED STATES.**
**WILTON et al. v. SAME.**
Nos. 10468, 10469.

Circuit Court of Appeals, Ninth Circuit.
Dec. 14, 1945.

Rehearing Denied Jan. 14, 1946.
Writ of Certiorari Denied March 25, 1946.
See 66 S.Ct. 821.

A. P. G. Steffes, of Los Angeles, and William S. Boyle, of Reno, Nev., for appellants.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, Eugene E. Beyer, and Walter M. Campbell, Jr., Sp. Assts. to the Atty. Gen. (Miles N. Pike, U. S. Atty., and Bruce R. Thompson, Asst. U. S. Atty., both of Reno, Nev., of counsel), for appellee.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellants Maxfield and Wilton were jointly charged in two indictments, each of which contained four counts. The first three counts of one indictment charged them with willfully attempting to evade payment of Maxfield's income taxes for the years 1935, 1936, and 1937, in violation of § 145(b) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Code, § 145(b).[1] The companion counts of the other indictment charged a willful attempt on the part of both to evade Wilton's income taxes for those years. The fourth count charged the two with conspiring with each other, each to evade his own as well as his co-defendant's income taxes for the years named, in violation of § 37 of the Criminal Code, 18 U.S.C.A. § 88.

Both were found guilty on all counts and each was given sentences of one year

---

[1] "(b) Failure to collect and pay over tax, or attempt to defeat or evade tax. Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

on each count of both indictments, sentences to run concurrently. Each was fined $5,000 on each count of one indictment.

Following is a brief outline of the case as developed on the trial. In 1932 appellants contracted with certain Nevada miners to form the Chiquita Mining Company, which was capitalized at 1,000,000 shares. Appellants received 250,000 shares as a conditional bonus for their services in organizing the corporation, and in addition obtained an option to purchase for $87,500 the stock issued to the miners (250,000 shares). They obtained also an option to purchase the treasury stock (500,000 shares) at 15¢ per share. The miners were paid the agreed sum for their stock, and ultimately this and the bonus stock, together with the treasury stock as acquired, was transferred to Chiquita Mines Syndicate.[2] The principal source of income during the years in question came from profits on resale for cash and other properties of the bonus stock and the stock acquired from the miners, the profits accruing to the Syndicate being divided equally between appellants.

A second source of profit grew out of an arrangement with persons named Colver by the terms of which certain shares of Kellogg stock were transferred to the Syndicate, the latter in turn agreeing to unwater and open the Herman mine to the satisfaction of the Colvers. The Colvers were to receive some further consideration the precise nature of which need not be detailed. The Kellogg stock was sold in 1935 and 1936 for $250,395.15. A written admission of the defendants was introduced on the trial to the effect that taxable profit in excess of $97,000 was made on this deal.

A third enterprise, claimed by the Government to have resulted in taxable profit, consisted of a series of contracts whereby Maxfield accepted the property of owners in return for his promise to make certain monthly payments for life to the respective grantors. According to a written admission of appellants received in evidence, the amount agreed to be paid was based on the speculative value of the property received and not upon the life expectancy of the grantor.[3]

On the basis of an examination of such books as appellants had, plus information gleaned from outside sources, a witness for the Government (a tax auditor named Claypoole) testified that for the tax year 1935 appellants had a total net income of $223,707.54. The net income reported by them and their respective spouses was $37,399.26. In the year 1936 the witness testified to a total net income of $135,199.99, whereas the total net reported for that year by the parties was $13,734.90. For 1937 the witness found taxable net income of $94,223.97. Except for a tentative report, appellants filed no tax return for that year.

■ 1. It is contended that there was but one conspiracy shown, whereas appellants were found guilty of two conspiracies, namely, those charged in the fourth counts of the two indictments. We think the contention is probably correct, cf. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23, where it was held that a single continuous agreement amounting to a conspiracy to commit acts in violation of several sections of the revenue laws is subject to punishment as one rather than as several conspiracies.

The situation does not, however, warrant a reversal. The sentences of imprisonment on the conspiracy counts run concurrently with those imposed on the remaining counts. The $5,000 fine was imposed for violation of but one of the fourth counts, and the penalties exacted were within the maximum prescribed for a single conspiracy. Appellants were in no way prejudiced. Cf. Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774.

■ 2. It is claimed that the conspiracy count of each indictment charged the same crime as that described in the first three counts. We think otherwise. The crime of attempting willfully to evade payment of income taxes is a substantive offense. In United States v. Johnson, 319 U.S. 503, 515, 63 S.Ct. 1233, 87 L.Ed. 1546, it was held that all persons who contribute consciously to furthering tax evasion aid and abet the commission of that offense, hence become principals in a common enterprise under § 332 of the Criminal Code, 18 U.S.

---

[2] There was evidence from which the jury were warranted in concluding that appellants were partners under the name of the Chiquita Mines Syndicate, which was a fictitious name certified to by Maxfield alone.

[3] A fourth source of income was from rents, interest, and dividends from other properties of appellants.

596

C.A. § 550. In Tinkoff v. United States, 7 Cir., 86 F.2d 868, certiorari denied 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346, it was held that though the income tax attempted to be evaded by the accused was that of another, that fact did not exempt him from prosecution for attempted evasion under the provisions of the statute here pertinent. And Lisansky v. United States, 4 Cir., 31 F.2d 846, 67 A.L.R. 67, holds that where co-partners have jointly committed the substantive offense of attempting to evade income taxes, and were so charged, a prosecution for conspiracy to evade was not thereby precluded.

 3. It is claimed that the court was in error in denying appellants' motion for a bill of particulars; and Singer v. United States, 3 Cir., 58 F.2d 74, is relied on as authority. In the Singer case the indictment failed to distinguish net from gross income; and the accused were surprised by the government's evidence to the extent that long recesses had to be granted on several occasions. There, also, the books of the accused were in the hands of the government and were withheld from the use of the defense.

No comparable situation existed here. The indictments clearly informed appellants of the annual amount of income on account of which taxes were allegedly evaded; and the figures given were intelligibly broken down. Appellants had their records in their own possession and were in position to analyze the general allegations of the bill. There was no showing or appearance of surprise, nor was any continuance requested while the trial was in progress.

The granting or denial of a bill of particulars is in the sound discretion of the trial court, and if no abuse or prejudice appears its action in denying the application will not be disturbed on appeal. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545; Robinson v. United States, 9 Cir., 33 F.2d 238, 240. The rule has been applied in income tax evasion cases. Cf. Paschen v. United States, 7 Cir., 70 F.2d 491; United States v. Skidmore, 7 Cir., 123 F.2d 604.

4. A major contention advanced is the insufficiency of the evidence to sustain a conviction of either appellant on any of the counts. The point attempted to be made under this head is that the difference between the amounts reported as income and the much larger amounts actually received was not shown to be taxable income.

The largest item said to have been improperly treated is a sum of approximately $134,000 advanced to the Chiquita Mining Company. The argument appears to be that the advances represented deductible operating expenses of the Syndicate, or that they formed part of the acquisition cost of the Chiquita stock. However, the written contract with the Chiquita Mining Company indicates that the advances agreed upon were to constitute loans repayable by the Company out of proceeds from sales of ore and bullion; and the government auditor testified to admissions of Maxfield that the sums advanced were loans, further stating that the books of the Mining Company so treated them.

Another item contended to be inaccurately handled by the auditor is the profit made on the Herman mine deal. Here, again, there was substantial evidence of the receipt of a very large taxable profit, not accounted for, some of which evidence consists of admissions by appellants to the auditor. This expert treated the unwatering of the Herman mine as a long-term transaction, giving appellants credit for expenses for the years 1935, 1936, and 1937 in the year of completion, which was 1937. He charged the total consideration received to gross income for that year. Appellants argue that the expenses involved were distributable among the years during which they were incurred; but if this procedure had been followed the total taxable income for the years in question would merely be redistributed, not reduced in amount. The Kellogg stock received by appellants as consideration was admittedly sold in 1935 and 1936 for approximately a quarter of a million dollars. Appellants apparently failed to report this income either on an annual basis or when their contract with the Colvers was completed.

 As already said, a portion of the Chiquita Mining Company stock was disposed of during the period in question, partly for cash and in part for property.[4] Appellants argue that if the property received in exchange had no readily realizable market value at the time of acquisition—and they say it had none—there could be no taxable income until sold. Accordingly it is claimed that the value—ap-

---

[4] The total amount realized on the sales during this period was approximately $475,000.

proximately $86,000—assigned to this property as income for the year in which acquired, was improperly so assigned. Taxable income realized in such an exchange is determined by the fair market value of the property received and not by the presence or absence of a readily realizable market value. Revenue Act of 1934 § 111(b), 26 U.S.C.A. Int.Rev.Code, § 111(b); Whitlow v. Com'r, 8 Cir., 82 F.2d 569.

■ There was evidence that the several properties had a fair market value at the time of acquisition, as well as evidence as to what the fair market value was. Indeed, appellants, over their own signatures, admitted the accuracy of the values assigned thereto by the auditor. It has been held, rightly so, we think, that the question whether property has a fair market value is one of fact. Mistrot v. Commissioner, 5 Cir., 84 F.2d 545; United States v. State Street Trust Co., 1 Cir., 124 F.2d 948. We may add that part of the property acquired was actually sold in 1936 and 1937, and there was no report of the gain therefrom in those years.

It is claimed that some $93,000, representative of the fair market value of the realty received in 1936 by Maxfield in exchange for his promise to pay stipulated monthly sums to the respective grantors during their lives, was improperly classed as taxable income. The government auditor treated this transaction as resulting in a taxable profit in the year the property was acquired, giving credit as deductions for the payments made by appellants. The latter insist that the transactions amounted to installment purchases, notwithstanding they admitted, in written statements furnished the auditor, that they realized taxable income based on the fair market value of the realty received. There was substantial evidence to support the government's theory.

■ Naturally, the prosecution was not required to prove the exact amounts of unreported income as alleged in the bill, cf. United States v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546; Cooper v. United States, 8 Cir., 9 F.2d 216. On this phase there was an abundance of evidence to support the verdicts.

■ 5. We are asked to hold that there is no evidence of willful intent to evade the tax, it being claimed that the showing does not measure up to the standards set in Spies v. United States, 317 U. S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

There is competent testimony in the record to the effect that appellants planned to keep two sets of books—one for exhibition purposes only; that they anticipated the receipt of a large income from sales of stock and desired to keep their taxes at a minimum; and there are admissions by appellants of substantial taxable profits never reported. There is, in addition, competent evidence that they failed to maintain adequate records, the only books kept being a cash journal derived from check stubs, bank statements, and deposit slips. In 1933 large sums of money were not put through any bank account. There were admissions of failure to keep records of property received in exchange for mining stock. On this phase the government auditor testified that nothing in appellants' books indicated that they owned any property. In order to obtain a complete record of appellants' transactions in Chiquita stock the auditor was compelled to use the stock register of the Chiquita Company in addition to the books of the parties themselves. There are other circumstances to be found in the record, including evasiveness on cross-examination, particularly of Maxfield, from which bad faith was inferable.

We are satisfied that the evidence of willful intent was sufficient to carry the case to the jury. The question of willfulness is one of fact, Arnold v. United States, 9 Cir., 75 F.2d 144; and direct proof of wrongful intent is not necessary to establish guilt in cases of this character, United States v. Commerford, 2 Cir., 64 F. 2d 28; Capone v. United States, 7 Cir., 51 F.2d 609.

■ 6. There was no lack of proof to support the conspiracy counts. It is claimed, however, that evidence of occurrences prior to the six-year period of limitations was inadmissible in proof of the existence of a criminal conspiracy within the period of limitations. The contention has no merit. United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168; Shaw v. United States, 5 Cir., 41 F.2d 26.

7. A number of other points are argued, some of which have to do with rulings on questions directed to the witness Claypoole, others with instructions requested and not given. We have considered all points advanced but are of opinion that no reversible error was committed either in

598

rulings on evidence or in respect of instructions. Those given the jury were adequate and fairly covered the case. Nor is there ground for holding that appellants were not accorded a fair trial or that they were denied opportunity to present their defense.

Affirmed.