Rubber Research Inc., a Minnesota Corporation v. Commissioner.
Rubber Research, Inc. v. Commissioner
Docket No. 419-67.
United States Tax Court
T.C. Memo 1969-24; 1969 Tax Ct. Memo LEXIS 271; 28 T.C.M. (CCH) 118; T.C.M. (RIA) 69024; February 3, 1969, Filed Harry H. Peterson, 738 Midland Bank *272 Bldg., Minneapolis, Minn., forthe petitioner. Robert F. Cunningham, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable period ending March 31, 1962 in the amount of $65,480 and an addition to tax pursuant to section 6651(a) [1] in the amount of $16,370. After certain concessions by petitioner, the principal issue is whether petitioner realized a gain upon the receipt of 136,500 shares of stock in a subsidiary in exchange for an exclusive sublicense. A secondary issue is whether petitioner is liable for an addition to tax pursuant to section 6651(a) because of a failure to file an income tax return for the taxable period ending March 31, 1962. Findings of Fact Some of the facts are stipulated and are found accordingly. Petitioner is a corporation organized under the laws of Minnesota whose principal place of business at the time of filing the petition herein was Minneapolis, Minnesota. Petitioner did not file a corporate income tax return for the period *273 ending March 31, 1962. At all times relevant herein, petitioner held an exclusive license covering certain chemical processes and patents pertaining thereto for the treatment of synthetic and natural rubber. Rubber Research Elastomerics, Inc. (hereinafter Elastomerics) is a corporation organized under the laws of Minnesota on April 7, 1961 with its principal office at the same address as that of petitioner. Elastomerics filed a corporate income tax return for the taxable year ending March 31, 1962 with the district director of internal revenue, St. Paul, Minnesota. 119 Under its exclusive license, petitioner granted a sublicense to Elastomerics on February 5, 1962 providing for the exclusive right to manufacture, use, and sell products employing chemical processes for the alteration, treatment, and improvement of the chemical properties of synthetic and natural rubber in exchange for 136,500 shares of Elastomerics stock, plus a royalty. Petitioner subscribed for the Elastomerics stock on January 20, 1962; Elastomerics authorized the stock issuance on February 3, 1962; and petitioner formally accepted the stock on February 15, 1962. Elastomerics placed the sublicense on its *274 books at a value of $136,500. Petitioner's adjusted basis in the sublicense was zero. On December 20, 1961, Elastomerics filed an application with the Minnesota Commissioner of Securities for the registration of 119,270 shares of stock with a par value of $1 per share, which was approved on January 16, 1962. During the period April 8, 1961 to the date of such approval, Elastomerics had received subscriptions for at least 61,980 shares at $1 per share from seventeen subscribers. Between January 16 and February 17, 1962, an additional 12,900 shares were sold to seven individuals at $1 per share. By March 31, 1962, only 14,222 of the 262,500 authorized shares remained unissued. The sale and promotion of Elastomerics stock was handled on a private basis. The stock was not offered or sold on any stock exchange, nor was an underwriter or broker engaged to sell Elastomerics stock at any time pertinent to this case. Petitioner received the advice of counsel as to the various legal, including tax, aspects of the transaction. Ultimate Findings of Fact The fair market value of Elastomerics stock on February 5, 1962 was $1 per share. Petitioner's failure to file a return for the taxable *275 year ending March 31, 1962 was not due to reasonable cause. Opinion Involved herein is a determination of the tax consequences to petitioner of its transfer of an exclusive sublicense to Elastomerics in exchange for 136,500 shares, or slightly more than 50 percent of the latter's stock. Petitioner originally alleged in its petition that the transaction constituted a nontaxable transfer under section 351. At trial and on brief, petitioner abandoned this contention and now relies upon the simple assertion that, although a taxable type of transaction occurred, the circumstances were such that the gain was incapable of being computed and therefore no tax should be imposed. Petitioner argues that both the sublicensing agreement and the Elastomerics shares received in exchange were incapable of valuation at the critical date. As to the sublicensing agreement, petitioner overlooks the fact that gain on a taxable exchange is determined by measuring the value of the property received (i.e., the Elastomerics shares) against the adjusted basis of the property transferred (i.e., the sublicensing agreement). Section 1001. Under the circumstances herein, adjusted basis is founded upon cost, *276 not value. Section 1011. There is not the slightest evidence in this record that petitioner had any investment in the sublicensing agreement and we have accordingly found its adjusted basis to be zero. As to the value of the Elastomerics shares, we think that petitioner has utterly failed to overcome the presumptive correctness of respondent's determination of $1 per share on the critical date. Indeed, we think the evidence affirmatively supports such determination and we have accordingly found as a fact that the shares had that value. Cf. Arc Realty Co., 34 T.C. 484 (1960), affirmed on this issue 295 F. 2d 98 (C.A. 8, 1961). Petitioner objected to several items purporting to relate to value which respondent was permitted to introduce into evidence on the ground that they related to transactions and determinations other than on the critical date. It is sufficient for us to note that, although not per se determinative of value, all of the transactions and determinations were sufficiently proximate in time to the critical date to be probative on the question before us. Petitioner's contention that various sales should not have been considered because they *277 were to friends of key corporate personnel must be rejected. In the first place, the price on a sale to friends can be as easily below as above fair market value. Standing alone, as they do on this record, such sales may properly be taken into account in making an ultimate determination of value. Secondly, even if such sales were not considered, we would affirm respondent's determination because petitioner has 120 failed to present any other probative evidence on this point. [2]
Nor can we accept petitioner's assertion on brief that the critical date is April 24, 1961 instead of February 5, 1962. The entire sequence of events, as revealed by the record herein, clearly supports the latter date, to say nothing of the statements of petitioner's counsel at the trial. Petitioner's reliance on Helvering v. TexPenn Co., 300 U.S. 481 (1937), is totally misplaced. In suggesting an alternative ground for its decision, the Supreme Court emphasized "the peculiar circumstances of this case" and the "terms of a restrictive agreement making a sale [of stock] impossible. *278 " See 300 U.S. at p. 499. The element of substantial restraint or alienation has been the significant consideration in subsequent applications of the Tex-Penn principle. United States v. State Street Trust Co., 124 F. 2d 948 (C.A. 1, 1942); compare Harold B. Kuchman, 18 T.C. 154 (1952), with W. H. Weaver, 25 T.C. 1067, 1080 (1956); see Arc Realty Co., supra, 34 T.C. at p. 493. In this case, there is not the slightest indication of any such restraint or other peculiar circumstances as would justify our refusal to determine a value. Cf. Victorson v. Commissioner, 326 F. 2d 264 (1964), affirming a Memorandum Opinion of this Court; William H. Husted, 47 T.C. 664 (1967); W. H. Weaver, supra. With respect to the addition to tax under section 6651(a), it is clear that every corporation is required to file a return when due, irrespective of whether it has gross income. Section 6012; section 1.6012-2(a)(1), Income Tax Regs. The record shows that petitioner received extensive advice of counsel as to the taxability of the transaction herein. But even if we accept *279 the proposition that, under certain circumstances, advice of counsel may be sufficient to show that failure to file a return was due to "reasonable cause and not willful neglect," there is no indication that any of the advice which petitioner received related to its obligation to file a return. Nor has petitioner offered any other evidence which might have provided a basis for concluding that its failure to file satisfied the exception of section 6651(a). Consequently, respondent's determination of the addition to tax must be sustained. Logan Lumber Co. v. Commissioner, 365 F. 2d 846, 855 (C.A. 5, 1966), affirming on this issue a Memorandum Opinion of this Court; Lee Lash Co., 6 B.T.A. 165 (1927); J. Hudson McKnight B.T.A. 165 (1927); J. Hudson McKnight, Conlorez Corporation, 51 T.C. - (Dec. 24, 1968). Decision will be entered for the respondent. Footnotes
1. All references, unless otherwise specified, are to the Internal Revenue Code of 1954.↩
2. Petitioner's claim on brief that it was prevented from so doing is completely belied by the record.↩