## TEXAS–EMPIRE PIPE LINE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2835.

Circuit Court of Appeals, Tenth Circuit.

March 2, 1944.

B. H. Bartholow, of New York City (Irving H. Bull and W. G. Dunnington, both of New York City, on the brief), for petitioner.

Helen Goodner, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Ray A. Brown, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States. The matter was before us on a prior petition to review. See Texas-Empire Pipe Line Company v. Commissioner, 10 Cir., 127 F.2d 220, to which reference is made for a statement of the facts.

The Texas-Empire Pipe Line Company of Illinois [1] was the wholly-owned subsidiary of the Texas-Empire Pipe Line Company.[2] On December 1, 1932, the subsidiary conveyed to the taxpayer all of its property and, in return therefor, the taxpayer canceled the indebtedness due it from the subsidiary, assumed the outstanding liabilities of the subsidiary, and surrendered to the subsidiary for cancellation all of the latter's stock. In our former opinion we held that the taxpayer realized a taxable gain upon the liquidation of the subsidiary. In arriving at that gain, it is necessary to determine the fair market value of the assets of the subsidiary transferred to the taxpayer on December 1, 1932.

At the first hearing, the Board of Tax Appeals arrived at that fair market value solely on the basis of the 1931 and 1932 earnings realized by the subsidiary from the property, projected over the economic life of the property. There was evidence before the Board of Tax Appeals of a valuation made by the Interstate Commerce Commission, of the cost of reproduction new or replacement cost, of cost less depreciation, and of the prices for which other pipe lines had been sold. We held it was error to determine the market value of the property solely on the basis of earnings and reversed and remanded with directions to determine the market value upon a consideration of all available criteria.

At the first hearing, the Board found the value of the property to be $11,100,000. On remand, the Tax Court recited that it had reexamined the evidence in accordance with the direction of our mandate and found that the fair value of the property was $9,000,000.[3] The taxpayer contends that the Tax Court did not follow the mandate. It states that the criteria of value, other than earnings, reflected in the record were:

| | |
|---|---|
| Original Cost (i.e., $6,921,332.11) Less Depreciation | $6,021,665.67 |
| Replacement Cost on December 1, 1932 (i.e., $5,910,000.00), Less Depreciation | 5,100,000.00 |
| Replacement Cost on December 31, 1934 (i.e., $6,221,894.00), Less Depreciation (as found by Interstate Commerce Commission) | 5,364,747.00 |
| Value as of December 31, 1934 (as found by Interstate Commerce Commission) | 5,946,606.38 |
| Value on Basis of Comparable Sales | 2,007,000.00 |

It accordingly asserts that the Tax Court erroneously regarded earnings as the dominant and principal criterion from which to determine the fair market value.

We held it was error under the existing facts to determine value solely from earnings. We did not hold that earnings should not be considered. Our mandate directed that the value be determined upon a consideration of all available criteria. We did not direct what weight should be given to the different criteria of value reflected in the record. Indeed, we think it was not within our province so to do. The fair market value of property on a particular date is a fact. Hence, a finding thereof is a finding of fact.[4] A finding of fact made by the Tax Court, if supported by substantial evidence, is binding on this court.[5] While it was reasonably certain that the

---

[1] Hereinafter called the subsidiary.

[2] Hereinafter called the taxpayer.

[3] In its opinion the Tax Court said: "In conformity with the instructions contained in the mandate of the Circuit Court of Appeals, we have studied conscientiously the views of the majority opinion and have reexamined the evidence in the record herein which is pertinent to the question remanded to us for decision.

"After a careful study of such evidence in the light of the views expressed in the majority opinion of the Circuit Court of Appeals for the Tenth Circuit, and only for the purpose of complying with the mandate of that court, we find the fair market value of the assets of the Texas-Empire Pipe Line Co. of Illinois on the date of its distribution and liquidation to the petitioner herein was the sum of $9,000,000."

[4] Anchor Co. v. Commissioner, 4 Cir., 42 F.2d 99, 100; Tracy v. Commissioner, 4 Cir., 53 F.2d 575, 579; Doric Apartment Co. v. Commissioner, 6 Cir., 94 F.2d 895, 896; Boggs & Buhl v. Commissioner, 3 Cir., 34 F.2d 859, 860; First National Bank of Memphis v. Commissioner, 6 Cir., 125 F.2d 157; Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491.

[5] Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 57 S.Ct. 324, 81 L. Ed. 491; Phillips v. Commissioner, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239.

rates of the subsidiary would have been regulated long before the expiration of the economic life of the property and that the subsidiary would not be permitted to continue to enjoy the unusually high earnings it experienced in 1931 and 1932, and while the Interstate Commerce Commission had fixed the tentative value of the subsidiary's property for rate-making purposes, it was uncertain when regulation and consequent reduction in the earnings of the subsidiary would ensue. Under such circumstances, the weight to be given to earnings was peculiarly a question of fact for the Tax Court. Moreover, there was an element of going concern and good will value likewise peculiarly a question of fact for the Tax Court.

It follows, we think, that it cannot be said that the Tax Court departed from the direction of the mandate, failed to apply proper legal standards of value or acted arbitrarily in arriving at the fair value of the property.[6]

The decision is affirmed.

---

[6] See Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S. Ct. 736, 86 L.Ed. 1037.