**F. A. GILLESPIE & SONS CO. v. COMMISSIONER OF INTERNAL REVENUE (two cases).**

Nos. 3180, 3181.

Circuit Court of Appeals, Tenth Circuit.

March 12, 1946.

Rehearing Denied May 23, 1946.

States. They involve deficiencies in income tax for the years 1937 and 1939.

F. A. Gillespie and Sons Company[1] is an Oklahoma corporation organized in 1920.

### 1. The Placedo Leases.

In 1937, the taxpayer owned one-half of a 7/8ths working interest in 11 oil and gas leases,[2] covering approximately 1400 acres of land, situated in the Placedo Oil Field, in Victoria County, Texas. The remaining one-half of the 7/8ths working interest was owned by the Superior Oil Corporation.[3]

On June 15, 1937, for a cash consideration of $200,000, the taxpayer transferred its interest in the Placedo leases to Superior, reserving 1/8th of 7/8ths of the oil and gas to be produced from the leases until it received the sum of $275,000 from the retained interest. No reservation was made with respect to equipment. The discovery well in the Placedo Field was completed by the taxpayer on April 10, 1935, on a lease covering approximately 170 acres. That well ceased to produce on October 21, 1936. At the date of the sale there were 15 wells on the Placedo leases, all of which were producing. Production was from the Greta sand. The thickness of that sand varied. It averaged nine feet. A deeper sand, known as the Frio, was productive in the Placedo Field at the time of the sale. There were also other deeper, known producing sands in the area, but they had not been tested in the Placedo Field. The greater part of the oil produced from the Placedo leases had a gravity of 23 degrees. At the time of the hearing before the Tax Court, only two of the leases, covering 211 acres, were producing. From the date of the sale through March, 1944, the taxpayer received a total of $111,-190.19 from the retained interest.

The taxpayer and Superior had each paid one-half of the intangible drilling and development costs. The taxpayer's share of such cost amounted to $142,467.80, which it had capitalized. The original cost of the leases was nominal and had not been capitalized by the taxpayer. The taxpayer claimed and was allowed depletion of $5,441.51 for the year 1935 and $10,104.98 for the year 1936 in its respective tax returns for those years. In its tax return for

Harold E. Rorschach, of Tulsa, Okl. (Jack L. Rorschach, of Vinita, Okl., on the briefs), for petitioner.

Hilbert P. Zarky, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

These are petitions to review two decisions of the Tax Court of the United

---

[1] Hereinafter called the taxpayer.

[2] Hereinafter referred to as the Placedo leases.

[3] Hereinafter called Superior.

1937, the taxpayer claimed a depletion allowance of $4,126.80. The Commissioner determined it was entitled to $5,717.12, making aggregate depletion allowances to the date of sale of $21,263.61. The taxpayer's interest in leasehold equipment had cost $120,403.46. It claimed and was allowed depreciation thereon in its returns for 1935, 1936, and 1937, aggregating $10,278.74. In its return for 1937, the taxpayer reported a loss of $37,181.64 on the sale of its interest in the Placedo leases and in the leasehold equipment.

The Commissioner determined that the value of the retained interest was $100,000. He deducted from the development cost the depletion allowances and from the leasehold equipment costs the depreciation claimed and allowed, and fixed the adjusted basis at $231,328.91. Of that amount, he allocated 100/300, or $77,109.64, to the retained interest and determined the taxable gain on the sale to be $45,780.73.

At the hearing before the Tax Court, the Commissioner conceded that the taxpayer was entitled to recover the full depreciated cost of the leasehold equipment, and that he erred in allocating any part thereof to the retained interest.[4]

## 2. The Shear Lease.

In 1939, the taxpayer was the owner of a lease, known as the Shear lease, which had been acquired for a nominal consideration. During 1939, the taxpayer transferred that lease, with the leasehold equipment thereon, for $49,950, reserving 1/8th of 7/8ths of the production therefrom until it received the sum of $100,000 from the retained interest. Intangible drilling and development costs to the date of the sale amounted to $26,937.98. Of that amount, $22,439.71 had been capitalized. Depletion deductions taken by the taxpayer, and allowed by the Commissioner, with respect to the lease amounted to $1,345.85. The cost of the leasehold equipment up to the date of sale was $9,665.92, and the depreciation claimed and allowed with respect thereto was $483.30. In its income tax return for 1939, the taxpayer reported a gain of $19,449.66 from the sale of that lease.

The Commissioner deducted the depletion allowed from the capitalized intangible drilling and development costs and the depreciation claimed and allowed from the leasehold equipment costs and fixed the

adjusted cost basis at $34,774.75. He determined the value of the retained interest at $60,000, arriving at a total value of $109,950. Of the adjusted cost as determined by him, he allocated 45.43 per cent, or $15,798.17, to the interest sold, and the balance, or $18,976.58, to the interest retained, and thus determined a net taxable gain of $34,151.83 from the interest sold.

At the hearing before the Tax Court, the parties stipulated that the value of the interest retained was $5,000; and the Commissioner conceded that the taxpayer was entitled to recover the full depreciated cost of the leasehold equipment, and that he erred in allocating any part thereof to the retained interest.

## 3. The Annuities.

By a contract entered into on May 15, 1929, between the taxpayer and F. A. Gillespie and Maud Gillespie, husband and wife, the Gillespies transferred to the taxpayer certain properties of the value of $1,464,240.22. The cost of these properties to the Gillespies equalled or exceeded the fair market value at date of transfer. Under the terms of the contract, the taxpayer agreed to pay F. A. Gillespie $15,000 per year for life, and to pay Maud Gillespie $15,000 per year for life. In addition, the taxpayer agreed that Maud Gillespie should receive during her life, $10,000 annually, as dividends, and if in any year funds should not be available for the declaration of dividends in that amount, the taxpayer would pay her such amount.

F. A. Gillespie was born on August 22, 1868, and Maud Gillespie on June 9, 1872. An annuity upon the life of a male individual born in the United States on August 22, 1868, which would have paid him $15,000 per annum for life, could have been purchased on May 15, 1929, from a reputable life insurance company, doing business in the United States, for the sum of $153,750. An annuity upon the life of a female individual born in the United States on June 9, 1872, which would have paid her $15,000 per annum for life, could have been purchased on May 15, 1929, from a reputable life insurance company, doing business in the United States, for the sum of $196,537.50.

Under the terms of the contract of May 15, 1929, the taxpayer paid F. A. Gillespie

---

[4] See Columbia Oil & Gas Co. v. Commissioner, 5 Cir., 118 F.2d 459, affirming 41 B. T.A. 38.

a total of $54,375 for the years 1929 to 1932, inclusive, and for the years 1933 through 1942 the amount of $15,000 per annum. The taxpayer paid Maud Gillespie, for 1932, and for certain settlements to that time, $34,891.01. For 1933, she was paid $25,000 and in November of that year she agreed that the taxpayer might discontinue paying her the additional $10,000 per annum. However, in 1934, she was paid $20,000, and for the years 1935 to 1940, inclusive, she was paid $15,000 per annum. She died in 1941, and for the portion of that year ending with September, she was paid $12,250.

The taxpayer claimed the right to deduct, as interest, 3 per cent of what it would have cost to purchase such annuities from its gross income in each of the years 1937 to 1939, inclusive.

The Tax Court held that, in computing gain on the sale of the leases, proper adjustment should be made for the prior deductions taken for depletion and depreciation, without regard to whether any tax benefit had been received; that an aliquot portion of the capitalized intangible drilling and development costs should be allocated to the taxpayer's retained interest in the leases; that the claimed deductions for interest were not allowable; and that on recomputation the amount of depletion allowed for 1937 and 1939 should be adjusted in accordance with its decisions.

The pertinent statutory provisions are set forth in the margin.[5]

The Revenue Act of 1938, 52 Stat. 490, 460, 26 U.S.C.A. Int.Rev.Acts, pages 1048, 1053, 1011, 1012, contained corresponding provisions in identical language.

■■ The petitioner contends that, although it claimed depreciation allowances in its tax returns, which were allowed by the Commissioner, such depreciation should not be considered in arriving at the adjusted cost basis of the property under § 113, because it received no tax benefit from such depreciation. This contention is foreclosed by the decision of the Supreme Court in Virginian Hotel Corp. v. Helvering, 319 U.S. 523, 526, 63 S.Ct. 1260, 1262, 87 L.Ed. 1561, 152 A.L.R. 871. The court there said:

"But it is said that 'allowed' unlike 'allowable', connotes the receipt of a tax benefit. The argument is that though depreciation in excess of an 'allowable' amount is claimed by the taxpayer and not disallowed by the Commissioner, it is nevertheless not 'allowed' if the deductions other than depreciation are sufficient to produce a loss for the year in question. 'Allowed' in this setting plainly has the effect of requiring a reduction of the depreciation basis by an amount which is in excess of depreciation properly deductible. We do not agree, however, with the contention that such a reduction must be made only to the extent that the deduction for depreciation has resulted in a tax benefit. * * * We find no suggestion that 'allowed', as distinguished from 'allowable', depreciation is confined to those deductions which result in tax benefits. 'Allowed' connotes a grant. Under our federal tax system there is no machinery for formal allowances of deductions from gross income. Deductions stand if the Commissioner takes no steps to challenge them. Income tax returns entail numerous deductions. If the deductions are not challenged, they certainly are 'allowed' since tax liability is then determined on the basis of the returns." [6]

■■ The taxpayer contends that it is entitled to recover its entire intangible

---

[5] Section 113 of the Revenue Act of 1936, 49 Stat. 1648, 1682, 26 U.S.C.A. Int.Rev.Acts, pages 859, 865, in part provides:

"Adjusted basis for determining gain or loss.

"(a) Basis (unadjusted) of property.— The basis of property shall be the cost of such property; * * *

"(b) Adjusted basis.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

"1. General Rule.—Proper adjustment in respect of the property shall in all cases be made—* * *

"(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws."

Section 23 of the Revenue Act of 1936, 49 Stat. 1648, 1658, 1659, 26 U.S.C.A. Int.Rev.Acts, page 827, provides:

"Deductions from Gross Income.

"In computing net income there shall be allowed as deductions: * * *

"(b) Interest.—All interest paid or accrued within the taxable year on indebtedness, * * *."

[6] See, also, Repplier Coal Co. v. Commissioner, 3 Cir., 140 F.2d 554, 558;

drilling and development costs without any adjustment for depletion claimed and allowed. The taxpayer elected to capitalize such costs. Art. 23(m)-16(b) (1) of Treasury Regulations 86 provides that if a taxpayer has elected to charge "such expenditures as fall within the options to capital account, the amounts so capitalized in so far as they are not represented by physical property, are returnable through depletion." Like provision is made in succeeding Treasury Regulations.[7] When a taxpayer elects to capitalize intangible drilling and development costs, they must be treated as part of the cost basis of the property and are recoverable through depletion allowances.[8] To permit the taxpayer to recover capitalized intangible drilling and development costs through depletion and also to recover them on the sale of the property would result in a double return of capital.

In determining the amount of gain sustained on the sales, the Tax Court allocated a portion of the cost basis of the leaseholds to the interests which were sold and a portion to the interests which were retained. The taxpayer does not dispute the correctness of the method of allocation used by the Tax Court which followed Columbia Oil & Gas Co. v. Commissioner, 5 Cir., 118 F.2d 459, but contends that the Tax Court erred in including in the cost basis of the leasehold, which was subject to allocation, the amount of intangible drilling and development costs incurred by it. Since the intangible drilling and development costs had been capitalized and were recoverable through depletion allowances, it was proper to treat them as part of the cost of the leases and to allocate the adjusted cost, after deducting the depletion which had been allowed, between the interests sold and the interests retained.

The Tax Court found that the value of the retained interest in the Place-

do leases was $100,000. An issue of value is one of fact.[9] It is true that the evidence of the expert who testified for the Commissioner is far from satisfactory, but the Tax Court had before it the facts upon which the experts for the taxpayer based their conclusions and the evidence of the return which accrued to the taxpayer from the retained interest in the years which followed the sale. It was not bound by the opinion of the experts but could reach its own conclusions as to value. Value is an ultimate question of fact to be determined by the fact-finding body.[10] The findings of the Tax Court, being supported by substantial evidence, are binding on this court.[11]

Section 22(b) (2) of the Revenue Act of 1936, 49 Stat. 1648, 1657, 26 U.S.C.A. Int.Rev.Acts, page 825, requires that the portion of amounts received in the taxable year, as an annuity, under an annuity or endowment contract, which equals 3 per centum of the aggregate premiums or consideration paid for such annuity, shall be included in gross income.

Statutory provisions for deductions from income are strictly construed and the taxpayer must bring himself clearly within the statutory provisions.[12]

In Deputy v. Dupont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416, the court said: "In the business world 'interest on indebtedness' means compensation for the use or forbearance of money. In absence of clear evidence to the contrary, we assume that Congress has used these words in that sense," and in Equitable Life Assurance Society v. Commissioner, 321 U.S. 560, 564, 64 S.Ct. 722, 724, 88 L.Ed. 927, the court said: "The 'usual import' of the word interest is 'the amount which one has contracted to pay for the use of borrowed money.'"[13]

Clearly, no part of the annuities paid by the taxpayer to the Gillespies was

---

American National Realty Co. v. Commissioner, 5 Cir., 136 F.2d 486.

[7] Treas.Reg. 94, Art. 23(m)-16(b) (1); Treas.Reg. 101, Art. 23(m)-16(b) (1).

[8] United States v. Dakota-Montana Oil Company, 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893; Choate v. Commissioner, 324 U.S. 1, 3, 65 S.Ct. 469.

[9] Texas-Empire Pipe Line Co. v. Commissioner, 10 Cir., 141 F.2d 326, 327.

[10] Emerald Oil Co. v. Commissioner, 10 Cir., 72 F.2d 681, 683; Wyoming Inv. Co. v. Commissioner, 10 Cir., 70 F.

2d 191, 193; Storley v. Armour & Co., 8 Cir., 107 F.2d 499, 506; Weicker v. Howbert. 10 Cir., 103 F.2d 105, 110.

[11] Texas-Empire Pipe Line Co. v. Commissioner, 10 Cir., 141 F.2d 326, 327.

[12] Equitable Life Assurance Society v. Commissioner, 321 U.S. 560, 564, 64 S. Ct. 722, 88 L.Ed. 927; New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Deputy v. Dupont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416.

[13] See, also, Old Colony R. Co. v. Com-

interest in the ordinary acceptation of that term. It was not paid on indebtedness. It was part of the consideration paid for the property conveyed.

That portion of annuity payments, equal to 3 per centum of the aggregate premiums paid, which must be included in the gross income of an annuitant, is not interest in the ordinary sense of that term, but a return on capital in the nature of interest.[14]

In the recomputation of the tax the depletion allowances for the years 1937 and 1939 were reduced. The decisions of the Tax Court reduced the net income of the taxpayer from certain properties as to which percentage depletion was allowed. Since $27\frac{1}{2}$ per cent of the gross income from such properties exceeded 50 per cent of the net income therefrom, the depletion allowances were necessarily reduced accordingly. As to other properties, where cost depletion exceeded percentage depletion and the former was allowed, the issues decided in favor of the taxpayer reduced the cost basis of such properties and necessarily reduced the depletion allowances. The recomputation merely reflected changes made necessary because of issues with respect to which the taxpayer prevailed before the Tax Court and is correct.

The decisions are affirmed.

missioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484; Autenreith v. Commissioner, 3 Cir., 115 F.2d 856.

[14] See Revenue Act of 1942, 56 Stat. 798, 868, § 163(c) (6) (B), 26 U.S.C.A. Int.Rev.Code, § 201(c) (6) (B).