Appeal of EGAN & HAUSMAN COM-        Docket No. 581.
PANY, INC.

The taxpayer had a balance in a deposit account in a bank closed by the State authorities. Evidence respecting the condition of the closed bank *held* sufficient to justify the taxpayer in charging off this account as a bad debt.

Submitted January 14, 1925; decided January 31, 1925.

*George Silverstein, C. P. A.*, for the taxpayer.
*W. Frank Gibbs, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, AND TRUSSELL.

At the hearing of this appeal certain matters of facts agreed upon between counsel for the taxpayer and the Commissioner were read into the record, and William F. Egan, Vice President and Secretary of the taxpayer corporation, was sworn and testified on behalf of the taxpayer. From the record so made the Board makes the following

FINDINGS OF FACT.

The taxpayer is a corporation having its principal office at Long Island City, New York.

On July 22, 1919, and for some years prior thereto, there had existed in the city of Philadelphia, Pennsylvania, a banking institution known as the North Penn Bank of Philadelphia, and on the 22nd day of July, 1919, the taxpayer had a deposit account with said bank with a balance on deposit and subject to check in the sum of $5,171.02.

That on July 22, 1919, the North Penn Bank was closed by the Commissioner of Banking of the Commonwealth of Pennsylvania, and taxpayer received, from the Special Deputy Commissioner of Banking, a letter, dated July 22, 1919, advising that the bank was closed and in the hands of the State Banking Department of Pennsylvania, and returning a check taxpayer had mailed for deposit.

The taxpayer corporation kept its books of account and made its income and profits tax returns on the basis of a fiscal period ending November 30 of each year.

Between July 22 and November 30, 1919, the taxpayer made frequent inquiries concerning the condition of the said North Penn Bank and received advice to the effect that there appeared to have been defalcations in large sums; that its accounts had been falsified; that it was at that time impossible to state what its assets were, if

any; that the defalcations appeared to run upwards of two or three million dollars, while the capital of the bank was only $150,000, and the state banking officials in charge of such bank indicated that they doubted if the depositors would recover anything from the amounts owing to them.

When the taxpayer closed its annual accounting period on November 30, 1919, it wrote off its account with the said North Penn Bank as a bad debt, and in making its income and profits tax return for said period claimed among its deductions the bad debt item of $5,171.02, representing its deposit balance in said bank on the day the bank was closed.

The Commissioner, in auditing the taxpayer's income tax return for that period, rejected this deduction, and from the Commissioner's determination of a deficiency, based upon such rejection, the taxpayer brings this appeal.

DECISION.

The deficiency as determined by the Commissioner is disallowed.

OPINION.

TRUSSELL: This appeal involves the interpretation and the application of section 234 (a) (5) of the Revenue Act of 1918, which reads:

Debts ascertained to be worthless and charged off within the taxable year.

This provision has appeared in substantially the same language in all the Revenue Acts from 1909 to 1924, and there appears to be no reason to doubt that in providing for this deduction from gross income Congress intended to recognize and to give effect to the universal practice of all business concerns to each year make a clean-up and eliminate from their accounts and from the statement of their assets all those accounts and debts which sound business judgment pronounced worthless at the time. This, of course, does not mean that taxpayers, in closing their books and making their income tax returns in accordance therewith, may arbitrarily reduce their taxable income by charging off any and all accounts and debts, but that they must, in making such chargeoffs and claiming deductions from gross income, ascertain that such accounts and debts are, in the general understanding of the business world, at the time unrealizable and for all business purposes worthless.

The witness for the taxpayer in this appeal, testifying as to the efforts which the taxpayer made to ascertain the condition of its deposit account with the North Penn Bank, said:

The first information that we had was that everything had been lost. The only information that we could get was that the personal securities were there, and we made every effort that we could to get some information from Mr. Homsher, who was the trustee or Special Deputy Commissioner, and all we could learn was that there were large items that he had not had time to check up and that he could not tell anybody anything for the first week. He said that he had never been in such a befuddled office as that, and that it was the worst managed bank that he had ever seen.

My father and I, and as well, each of us individually, interviewed Mr. Homsher as often as we possibly could, I should say probably a dozen or 15 times before the end of November, in an endeavor to get some information, and he finally said this, after we told him when we got to the end of our fiscal year

and had to have some information upon which to base the returns for the year. He finally told us this, that we had as well write this off and forget it, and he did not think that we were going to get anything; that we might consider anything that we did get as found; I think those are about his words.

And we ascertained that just before we closed our books in November, we had that information given us, and it was on the strength of that information that we were absolutely not going to get anything that we took this deduction. We tried every way we could to get some information. And the only satisfaction we could get was that Mr. Homsher said that so far as he had gone into the thing it looked as if we would not get anything, and that we would be very lucky if we did.

That is the way he said it; that we could consider anything we got as found. He did use the word "criminal"—said the bank was "criminal banking," and that it was one of the worst cases of careless extravagance and one of the most mismanaged banks that he had ever seen., He said that it was a complete loss. That was the idea of the conversation.

Thus are detailed the efforts made by the taxpayer to ascertain whether its deposit account at the North Penn Bank was worthless as of November 30, 1919, and whether sound business judgment would warrant its being charged off as a bad debt. In the hearing of this appeal the Commissioner's counsel argued that the charging off of this account as a bad debt by the taxpayer was premature; that the defunct bank had, or at least could not be said not to have had, some assets; and that some realization might be recovered by the depositors at some future date when the affairs of the defunct bank should be finally wound up and liquidated. In support of that argument he urged the consideration of the fact that in October, 1920, a liquidating dividend was received by the depositors and a final liquidating dividend was received on February 8, 1924, and that the total of such dividends received by this taxpayer was $1,495.02. But this distribution was not known or in contemplation in November, 1919, and was the result solely of events which took place thereafter.

The statute under which the taxpayer claims this deduction uses the words "debts ascertained to be worthless and charged off within the taxable year." There are thus two things which the taxpayer must do to avail itself of a deduction under this section of the statute. He must ascertain a debt to be worthless and he must charge it off within the year. That this debt was charged off within the taxable year is not questioned. It only remains to inquire, was it ascertained to be worthless on or before November 30, 1919?

The uncontradicted record in this appeal shows that this taxpayer made every reasonable effort by inquiring from said officials in charge of the defunct bank as to whether or not its account with that defunct bank had any value and that the information which the taxpayer received was to the effect that the said officials in charge of the defunct bank's affairs regarded the account as worthless and could make no prediction as to when, if ever, any recovery might be made. Upon information so procured this taxpayer determined to and did eliminate this account from its assets at the end of its accounting period, and in so doing we are of the opinion that the taxpayer, acting upon the best and only information obtainable and with the soundest business judgment and prudence, wrote off the account. There is no doubt that from the day the bank closed until November 30 of the same year this account had absolutely no value. As a financial asset it was then worthless. In adjusting their accounts and debts business men are called upon to use sound business judgment and prudence and are justified in eliminating from their

assets such accounts and debts as are past due and which they are satisfied that they can not realize upon within some reasonably determinable period.  They do not have to await uncertain and future events, nor are they called upon to wait until some turn of the wheel of fortune may bring their debtors into affluence, or to enable the receivers of a bankrupt institution to eke out a liquidating dividend. We are of the opinion that in this instance the taxpayer exercised sound business judgment in charging off this account and that the same must be allowed as a deduction from gross income for the period within which it was charged off.  .