## APPEAL OF PACIFIC PIPE & SUPPLY CO.

Docket No. 1943.   Submitted July 14, 1925.   Decided October 16, 1925.

During 1920 taxpayer charged off on its accounts a debt due it from a corporation which was adjudicated a bankrupt in that year, later in the year restoring a portion of such indebtedness to its books. Evidence *held* sufficient to justify taxpayer in charging off the entire amount as a bad debt.

*Homer H. Tooley*, C. P. A., for the taxpayer.
*W. Frank Gibbs*, Esq., for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

Taxpayer appeals from the determination of a deficiency in income and profits taxes for 1920 of $32,420.60, resulting, in part, from the disallowance of a deduction for a bad debt in the sum of $48,105.37 alleged by the taxpayer to have been sustained in that year.

### FINDINGS OF FACT.

Taxpayer is a corporation organized under the laws of the State of California.

During the year 1918 taxpayer purchased automobile tires from the Palmer Tire & Rubber Co. of Chicago. A portion of the merchandise was sold and upon trial was found to be very unsatisfactory. The unsold portion of the merchandise was returned to the Palmer Tire & Rubber Co. in the latter part of 1918 and in January, 1919, with the understanding that taxpayer would be reimbursed in an amount representing the cost to taxpayer of said merchandise. No payment was made on the account and sometime in the latter part of 1919 or the early part of 1920 it was referred to the attorneys of the taxpayer in Chicago for collection. The efforts at collection were unsuccessful, and on August 3, 1920, the Palmer Tire & Rubber Co. was adjudicated a bankrupt. At that time the Palmer Tire & Rubber Co. was indebted to the taxpayer in the sum of $50,637.23. Notice of the first meeting of creditors of the bankrupt was received by the taxpayer on or about August 25, 1920, and on August 31, 1920, the taxpayer charged off the entire amount of this indebtedness on its books to profit and loss. Unsuccessful efforts had been made for several months previous to the bankruptcy to collect the amount and the action of the taxpayer in charging off such sum was in accord with its usual policy to eliminate all worthless accounts from its books as soon as such accounts had been found to be uncollectible. In December, 1920, taxpayer wrote its Chicago attorneys concerning the bankruptcy and was advised by them as follows:

Your claim against this bankrupt estate has been filed with the referee, but as yet has not been allowed inasmuch as several of the other creditors have evidenced their intention of contesting your claim, together with several others. Appreciating as we do the expense that would be involved in any extended litigation over the allowance of your claim, we have been endeavoring to convince the attorneys representing the objecting creditors of its validity outside of court. While they have not as yet arrived at any definite conclusion, we feel that in all probability they will decide to waive any objection to the claim.

The settlement with the St. Joseph Development Company of the rights of the bankrupt estate in and to the premises occupied by it in St. Joseph, Michigan, for $6,000.00, has been confirmed by the referee. The remaining assets, consisting of personal property, were sold at public sale for the sum of $17,500. The claims allowed at this time aggregate approximately the sum of $50,000. Adding to this your claim, together with the others not yet allowed, the aggregate amount of the liabilities will very likely be considerably in excess of $100,000. From this you can plainly see that in all probability the creditors will not receive very much more than 5 per cent on their claims.

Acting on this information the taxpayer, on December 24, 1920, restored to its books an amount of $2,531.86 as an estimate of the amount to be received from the bankrupt's estate (being 5 per cent of its claim), and upon its 1920 income-tax return claimed as a deduction the sum of $48,105.37.

### DECISION.

The deficiency, if any, should be computed in accordance with the following opinion. Final determination will be settled on consent or on 20 days' notice, in accordance with Rule 50.

### OPINION.

Phillips: In this appeal we are called upon to determine whether an amount due the taxpayer from a corporation which became bankrupt in 1920 was a proper deduction under section 234 of the Revenue Act of 1918 to be taken in computing its income for 1920. It appears that merchandise was purchased by the taxpayer from the bankrupt which proved to be unsatisfactory. In the latter part of 1918 and in January, 1919, a portion of such merchandise was returned to the bankrupt, with the understanding that taxpayer was to be reimbursed by the bankrupt for the cost of the goods. Repeated efforts were made to collect the account, but without success. The account was referred by taxpayer to its Chicago attorneys, who had no success in collecting. On August 3, 1920, the debtor was adjudicated a bankrupt and, upon learning of this, taxpayer, in accordance with its regular custom of reflecting only sound accounts upon its books, charged off the entire amount of the indebtedness.

In December, 1920, prior to closing its books, it wrote its Chicago attorneys and was advised by them that its claim had not yet been

allowed, that other creditors had evidenced an intention of contesting its allowance and that in all probability the creditors would not receive much more than 5 per cent of their claims.

The action of the taxpayer in charging off the debt on its books upon learning of the bankruptcy, knowing as it did that the merchandise sold by the debtor had proven unsatisfactory, and after having unsuccessfully attempted for several months to collect the account, was in accordance with sound business practice. The information received by the taxpayer in December, 1920, did not alter the situation, for it indicated that taxpayer might be called upon to prove its claim over objections to be filed by other creditors, with consequent further expense to it, and that with this difficulty overcome only a small dividend would ultimately result. The words "debts ascertained to be worthless," used in the statute, must be given a reasonable interpretation. The possibility that a small part of the debt may ultimately be recovered will not prohibit the writing off of the debt as worthless for income-tax purposes when every consideration of good business directs that it be charged off. As we have said in the *Appeal of Egan & Hausman Co., Inc.*, 1 B. T. A. 556:

> In adjusting their accounts and debts business men are called upon to use sound business judgment and prudence and are justified in eliminating from their assets such accounts and debts as are past due and which they are satisfied that they can not realize upon within some reasonably determinable period. They do not have to await uncertain and future events, nor are they called upon to wait until some turn of the wheel of fortune may bring their debtors into affluence, to enable the receivers of a bankrupt institution to eke out a liquidating dividend.

We do not mean to say that in the case of every bankruptcy debts due may be charged off as worthless. Each account most stand upon its special circumstances. In the instant appeal the claim of the taxpayer against the bankrupt's estate had not yet been allowed, other creditors were considering the advisability of contesting it, and at best there was a prospect for the ultimate payment of only a small dividend. In such a situation we conclude that the debt had been ascertained to be worthless within the degree of certainty required by the statute.

We must also consider what effect, if any, followed from the action of the taxpayer in restoring a part of the account to its books. The testimony was that this was done, not because the debt was not considered worthless, but to avoid any possible claim by the taxing authorities that taxpayer was taking a greater deduction than it was entitled to receive. The amount restored was nothing more than an estimate of the amount which might be recovered at some time in the

future. It did not affect in any way the actual worthlessness of the debt.

We believe that we should look to the actual situation, rather than to the book entries, and, doing so, we conclude that the debt of $50,637.23 was a proper deduction from 1920 income and that the tax should be recomputed accordingly. *Appeal of Huning Mercantile Co.*, 1 B. T. A. 130.

ARUNDELL not participating.