George M. Burger and Erna Burger, et al. [1] v Commissioner. Burger v. Commissioner
Docket Nos. 1154-62, 1613-62 - 1615-62. .
United States Tax Court
T.C. Memo 1964-92; 1964 Tax Ct. Memo LEXIS 240; 23 T.C.M. (CCH) 554; T.C.M. (RIA) 64092; April 13, 1964
A. F. Rankin, 926 S. 8th St., Manitowoc, Wis., for the petitioners. Dennis J. Conlon, for the respondent. SCOTT
Memorandum Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar year 1959 in the following amounts: Docket
Defi-
No.
Petitioners
ciency
1154-62
George M. and Erna Burger
$3,033.15
1613-62
Walter W. and Catherine
Burger
2,638.36
1614-62
Caroline Burger
3,622.50
1615-62
Henry C. Burger, Deceased,
Lila Burger, Executrix, and
Lila Burger, Individually
3,047.24
The issue for decision is whether each petitioner is entitled to a bad debt deduction in the calendar year 1959 because of a $21,000 indebtedness of Jafco Marine, Inc. to Burger Boat Company (a corporation the stock of which was owned by petitioners, *241 which had elected to be treated as a small business corporation under section 1371 of the Internal Revenue Code of 1954) becoming worthless in the fiscal year of the Burger Boat Company ended August 31, 1959. All of the facts have been stipulated and are found accordingly. All of the petitioners resided in Manitowoc, Wisconsin, and filed their income tax returns for the calendar year 1959 with the district director of internal revenue at Milwaukee, Wisconsin. George M. and Erna Burger, husband and wife, filed a joint income tax return for this year, as did Walter W. and Catherine Burger, husband and wife. Caroline Burger filed an individual income tax return for the year 1959, and Henry C. Burger, now deceased, and Lila Burger filed a joint income tax return for this year. Burger Boat Company was incorporated under the laws of the State of Wisconsin in 1915. It reported its income on a fiscal year basis ending August 31, and during its fiscal year ended August 31, 1959, its principal place of business was Manitowoc, Wisconsin. For its fiscal year ended August 31, 1959, it filed its income tax return on Form 1120-S, "United States Small Business Corporation *242 Income Tax Return," having made a timely election to be treated as a small business corporation under the provisions of section 1371 of the Internal Revenue Code of 1954. Its return for its fiscal year ended August 31, 1959, was filed with the district director of internal revenue at Milwaukee, Wisconsin. Burger Boat Company prepares its Federal income tax returns on an accrual basis of accounting. At all times relevant to the instant case, Caroline Burger, Henry C. Burger, George M. Burger, and Walter W. Burger owned all of the stock of Burger Boat Company, and each of these individuals owned 102 shares of such stock. Each of these petitioners reports his income on the cash basis of accounting. On October 15, 1956, Burger Boat Company sold the cruiser White Cap, a Matthews model 1954 raised-deck cruiser, to Jafco Marine, Inc., a New York corporation of Buffalo, New York. The sales price was $27,500, of which Jafco Marine, Inc. paid $2,500 on account and was allowed a commission of $4,000, leaving a balance of $21,000 due on the account. At the time of the sale, the cruiser White Cap was located at Vermilion, Ohio, and the terms of the sale were f.o. *243 b. Vermilion. Jafco Marine, Inc. was adjudicated a bankrupt on November 19, 1956, while owing Burger Boat Company the $21,000 debt representing the unpaid balance of the sales price of the crusier White Cap. On May 1, 1957 a statement of affairs of Jafco Marine, Inc., was filed which disclosed total liabilities of $615,248.67 and total assets of $422,782.18. Included in the total assets of $422,782.18 were preferred stock and advances to the Seamaster Division of Jafco Marine, Inc., in the amounts of $40,000 and $240,817.25, respectively. On May 1, 1957, Seamaster Division of Jafco Marine, Inc., was in bankruptcy. There were wage claims of $332.11, tax claims of $5,998.05, and secured claims of $26,194.21 against Jafco Marine, Inc. The total unsecured claims amounted to $338,134.65 and the balance of $244,589.65 consisted of various contingent liabilities none of which have materialized. On January 31, 1957, Burger Boat Company filed a reclamation petition in the District Court of the United States for the Western District of New York, the court by which Jafco Marine, Inc. had been adjudicated a bankrupt, contending that title to the cruiser White Cap was vested in it and that therefore *244 the cruiser did not constitute an asset of the bankrupt but was the property of Burger Boat Company. An amended reclamation petition on the same basis was filed on February 14, 1957. On June 12, 1957, Burger Boat Company filed a proof of claim with the bankruptcy court without prejudice to its prior claim as owner of the vessel and its rights under the reclamation petition. On August 30, 1957, Burger Boat Company along with other interested parties executed a stipulation permitting the trustee in bankruptcy to sell the cruiser White Cap for the sum of $25,000 with the condition that the proceeds of such sale be held by the Bankruptcy Court subject to any liens, rights, or claims which any of the parties had against the vessel itself. On December 26, 1957, the Referee in Bankruptcy dismissed the reclamation petition of Burger Boat Company finding that title to the cruiser White Cap did pass from Burger Boat Company to the bankrupt before the date of bankruptcy and granted the motions made at the closing of the hearing on Burger Boat Company's reclamation petition by counsel for other interested parties to dismiss the petition. The finding of the Referee in Bankruptcy was the concluding *245 paragraph of an 11-page memorandum in which the referee discussed Burger Boat Company's position on its reclamation petition, the positions of the parties in opposition thereto, the facts surrounding the disputed transaction and the applicable statutory and case law. In a letter dated January 9, 1958, the attorney for Burger Boat Company who had represented that company in the bankruptcy proceeding and had filed on its behalf the reclamation petition addressed a letter to H. C. Burger, President of Burger Boat Company in which he analyzed the decision of the Referee in Bankruptcy against Burger Boat Company on its reclamation petition and after such analysis concluded the letter with the following: While we disagree, of course, with the conclusion reached by the Referee, it is only fair to state that there is some evidence supporting his findings, which would make them hard to upset on an appeal. We might be successful in reversing the Referee on appeal, on the basis that the Bill of Sale was a separate and independent document and was the best evidence of title and was retained by Nurger at all times, with the express agreement of Jafco, that being undisputed. Also, it might be *246 that the taking of an appeal would bring about some sort of compromise, and conceivably some contribution might be made by Frauenheim or his family to get rid of this whole matter and avoid our prosecution of the fraud allegations against Frauenheim personally. We do not like to involve you in further expensive litigation of this matter when the chances of success are questionable, but I do think that taking an appeal (whether it was carried through or not), might be of some assistance in reaching a settlement. When you have thought this over, I would like to meet with you and with John Emmerling to discuss it further. On February 26, 1958, Burger Boat Company filed in the United States District Court for the Western District of New York a petition for review of Referee's order dismissing its reclamation petition. In this petition for review Burger Boat Company alleged that the findings and order of the Referee were erroneous in fact and in law, listing alleged errors in 15 separate paragraphs. No offer or suggestion of settlement for compromise or partial allowance of the reclamation petition filed by Burger Boat Company against the Jafco Marine, Inc. was made by any other *247 creditor or the Trustee in Bankruptcy or any other party interested in the bankruptcy proceeding at any time. On or about August 20, 1959, legal counsel of Burger Boat Company advised that company that in his opinion the claim against Jafco Marine, Inc. had become definitely worthless with the possible exception of a small dividend for unsecured creditors. At a meeting of the directors of Burger Boat Company on August 29, 1959, which meeting was attended by petitioners' attorney and certified public accountant the directors took the following action: Attorney A. F. Rankin stated to the meeting that in his opinion the claim of the Company against Jafco Marine, Inc., of Buffalo, New York, had become defimitely worthless during the current fiscal year, due to inability to obtain a favorable review of the adverse ruling of the Jafco Referee in Bankruptcy. He recommended that the account, in the amount of approximately $21,000, be written off as worthless. Upon motion, the meeting voted to write off the account and Accountant Hooper was instructed accordingly. On September 22, 1960, the United States District Court for the Western District of New York entered its order affirming *248 the order of the Referee in Bankruptcy dismissing Burger Boat Company's reclamation petition. The entry of this order was the concluding paragraph of a 6-page memorandum stating in part as follows: Petitioner contends that the Referee's finding that title had passed on October 5th was clearly erroneous and accordingly that his decision should be set aside. It relies principally upon the fact that a Coast Guard "Certificate of Award of Number to an Undocumented Vessel" was retained by Burger with the bankrupt's consent. It is undisputed that the reverse side of this certificate contains a "BILL OF SALE" signed in blank by the former owner of the boat from whom Burger had obtained the certificate in the first instance. This is alleged to be conclusive evidence that the parties intended that title remain in Burger until full payment. The Referee treated this certificate with the annexed "BILL OF SALE" as but one of the circumstances to be weighed with the other evidence before him. It cannot be said in this case that the Referee, who had occasion to listen to conflicting oral testimony and appraise the truthfulness thereof, was clearly erroneous in not concluding that the possession *249 of a "BILL OF SALE" printed on the reverse side of a Coast Guard certificate, signed in blank, established that title was in the possessor of the bill, when the boat itself was in the possession of the bankrupt and there were other surrounding circumstances which were consistent with oral testimony to the general effect that the parties had intended a present sale at the time of the telephone conversation referred to. On June 2, 1962, the attorney for the trustee in bankruptcy of Jafco Marine, Inc. addressed a letter to counsel for Burger Boat Company in which he stated that it was difficult to accurately estimate the probable percentage of dividend but that it was his belief and that of the trustee, based upon the facts as then known, that the dividend to creditors would in all probability be 5 percent of the claim filed. On or about May 28, 1963, Burger Boat Company received a check for $1,039.50 from the Referee in bankruptcy representing a first and final dividend of 4.95 percent of the $21,000 claim of Burger Boat Company against the bankrupt. Burger Boat Company in its United States Small Business Corporation Return of Income for its fiscal year ended August 31, 1959, deducted *250 as a bad debt the $21,000 (actually $21,009) representing the unpaid purchase price for the cruiser White Cap by Jafco Marine, Inc., thus deceasing the income to be reported by each of its shareholders by the pro rata portion of the amount of such deduction. Respondent in his notice of deficiency increased the income for the year 1959 as reported by each stockholder as his pro rata share of the undistributed taxable income of Burger Boat Company by the amount of $5,250, with the following explanation: It is determined that the claimed business bad debt deduction of $21,000.00 of an Account Receivable of Jafco Marine, Inc., is disallowed because you have not established that you are entitled to such deduction. Petitioners take the position that the stipulated facts are sufficient to show that the $21,000 debt owed by Jafco Marine, Inc., to Burger Boat Company became worthless during the latter company's fiscal year ended August 31, 1959. Petitioners recognize that they have the burden not only to show that the debt had no value as of August 31, 1959, but also to show that it did have value as of September 1, 1958. See Seaboard Commercial Corporation, 28 T.C. 1034, 1054 (1957). *251 Petitioners in their argument that the debt had no value as of August 31, 1959. rely primarily on Kugel v. Ryan, 289 F. 2d 329 (C.A.0 2, 1961). Petitioners particularly stress the language of the Court in that case used in the proper year in which the partnership loss there involved was deductible by the individual partners "that their share of the partnership loss was not a loss deductible on their 1946 individual returns unless in the light of contemporary facts, they then had no reasonable prospect of recovery on their claim for indemnification." Petitioners argue that the instant case is analogous to Kugel v. Ryan, supra.They state that Burger Boat Company filed a petition for review of the decision of the Referee in Bankruptcy not with the hope of reversal of the referee's holding but in the hope that the appeal would cause other parties to offer some settlement. They compare this analysis of the facts in the instant case with the following statement in Kugel v. Ryan, supra: * * * The fact that taxpayers brought suit against Sparks in 1946 does not foreclose all possibility of uncollectibility, especially in view of their assertion *252 that the suit was brought not in hope of recovery, but rather to scotch invidious stories then being spread abroad by Sparks. Petitioners point out that this Court early recognized the principle that the remote chance of a small future recovery does not necessarily prohibit the charge-off and deduction of a debt as a bad debt, citing Pacific Pipe & Supply Company, 2 B.T.A. 870 (1925), and Egan & Hausman Co., Inc., 1 B.T.A. 556 (1925). In Kugel v. Ryan, supra, the Court held the pendency of a suit did not as a matter of law preclude the taxpayer from introducing evidence to establish, if he could, that there was no reasonable prospect of collection of the indebtedness. That case reversed an order of the lower court granting defendant's motion for summary judgment. The instant case has been submitted with all the evidence stipulated. We must determine whether this evidence establishes that the indebtedness of Jafco Marine, Inc. to Burger Boat Company became worthless in the fiscal year of Burger Boat Company ended August 31, 1959. The only two factual *253 differences in the situation as it existed on September 1, 1958, and as it existed on August 31, 1959, with respect to the indebtedness involved is that as of September 1, 1958, Burger Boat Company's petition for review of the ruling of the Referee in Bankruptcy had been pending only 6 months as compared to 18 months on August 31, 1959, and that as of August 31, 1959, legal counsel for Burger Boat Company had advised the company that in his opinion the claim against Jafco Marine, Inc., had become definitely worthless with the possible exception of a small dividend for unsecured creditors. The question is whether these two facts are sufficient to establish the fiscal year 1959 of Burger Boat Company as the year in which the Jafco Marine, Inc., debt became worthless. Petitioners point to the following language in Person Const. Co. v. Commissioner, 116 F. 2d 94 (C.A. 7, 1940), affirming a Memorandum Opinion of this Court, used following examples of a situation in which an indebtedness clearly became worthless in a certain year and a situation in which an indebtedness had clearly not become worthless at the close of a certain year: Between the two extremes there lies *254 a twilight zone. The ascertainment of the date when a debt, which falls within this zone, becomes worthless, is not always easily determined. Fairness in such a situation necessitates an allowance for a latitude of judgment on the part of the taxpayer. And the latitude should be allowed the taxpayer, not the Government. It is his judgment that should count, provided always there is good faith, and common sense back of his judgment. Making an allowance for use of judgment by a taxpayer as to when an indebtedness has become worthless does not relieve the taxpayer of proving facts which show a reasonable basis for his judgment. Otherwise a taxpayer could pick the most beneficial year taxwise to take a deduction for any indebtedness of somewhat doubtful value. To substantiate the deduction claimed for a debt which has become worthless, it is generally necessary that a taxpayer be able to show that some identifiable event occurred in the taxable year in which the deduction is claimed which caused the debt *255 to become worthless. United States v. White Dental Mfg. Co., 274 U.S. 398 (1926), and W. A. Dallmeyer, 14 T.C. 1282 (1950). If any reason did exist in the instant case why the passage of 18 months as compared to 6 months would make it any less certain that there would be no offer of settlement of Burger Boat Company's reclamation claim, it is not shown in this record. Furthermore, it is shown that the petition for review of the ruling of the Referee in Bankruptcy was a substantive one, that it was argued before the United States District Court for the Western District of New York, that the Court wrote an opinion which indicated that a real substantive question was involved in the case, and that the money to pay the debt owed to Burger Boat Company, if that company was successful in its reclamation petition, was being specially held by the trustee in bankruptcy. Burger Boat Company's reclamation claim and the petition for review of the dismissal thereof by the Referee in Bankruptcy were not comparable to a suit brought merely for the purpose of reducing an indebtedness to a judgment, which judgment when obtained would be worthless. See Charles Henry Mattlage, 3 B.T.A. 242 (1925) *256 and Redfield v. Eaton, 53 F. 2d 693 (D.C.Conn., 1931). The facts in the instant case are not comparable to the situation suggested in Kugel v. Ryan, supra, of a suit brought for a purpose other than any hope of collectibility. The stipulated facts do not show that Burger Boat Company's petition for review of the Referee's ruling was hopeless but rather show that there was some reasonable possibility of its being successful. The attorney in recommending the appeal did suggest that the chances of success were questionable but this might be said of any appeal of any ruling. The appeal was not dismissed in August 1959 but was prosecuted on substantive issues to a decision by the Court. Although the outcome of such litigation was uncertain, it cannot be said that no reasonable possibility of success in the appeal existed as of August 31, 1959. Certainly, every indication in this record is that the petition for review of the Referee's ruling was in good faith still being prosecuted and the legal soundness of that ruling contested as of August 31, 1959. Cf. Dixie Pine Products Co. v. Commissioner, 320 U.S. 516 (1944), and Security Mills Co. v. Commissioner, 321 U.S. 281 (1944). *257 The fact that an attorney for a taxpayer thinks a debt is worthless is not sufficient proof to show such debt to be worthless. Carl Muller, 4 B.T.A. 169 (1926). We sustain respondent's determination. Decision will be entered for respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Walter W. Burger and Catherine Burger, Docket No. 1613-62; Caroline G. Burger, Docket No. 1614-62; and Estate of Henry C. Burger, Deceased, Lila Burger, Executrix, and Lila Burger, Individually, Docket No. 1615-62.↩